## HALTERLINE vs. RICE.

62b 593
57ad360

The general rule is, that a sale of chattels is not complete, so as to vest title to the property purchased in the vendee, until delivery by the vendor. It is also a rule equally general that title does not pass while anything remains to be done by the vendor in order to ascertain either the quantity or price of the thing agreed to be sold.

These rules apply not only to property *in esse,* but also to that which is thereafter to be manufactured.

In the case of a contract to manufacture goods and then sell them, it is a general rule that no property in the material passes to the purchaser until the article has been finished and delivered, or is ready for delivery, and appropriated to the benefit of, or set apart for, the purchaser, with his assent, and accepted by him.

The plaintiff, going into the shop of B. & Co. and finding there a cutter in an

Halterline *v.* Rice.

unfinished state, made a bargain with them for it, whereby they were to finish and deliver it to him within a week or ten days, for a specified price, which was afterwards paid. The cutter remained in the possession of B. & Co., unfinished. They failed, and made an assignment of their property, for the benefit of creditors, to the defendant, who took possession of and sold it. *Held* that the title to the cutter did not pass to the plaintiff, and no action could be maintained by him to recover the value of the cutter.

*Held, also,* that in the absence of any proof showing or tending to show a delivery, or that either party contemplated a delivery till after the cutter was completed, a finding, on such evidence, that there was a delivery, could not be of much force.

THIS is an action of trover to recover the value of a cutter.

The action was commenced before a justice of the peace of the county of Herkimer, where the plaintiff recovered $45.38 damages and costs. From the justice's judgment, the defendant appealed to the county court. The county court affirmed the judgment, and the defendant appealed to this court from the latter judgment.

There was no dispute as to the facts. On the 4th day of January, 1862, the plaintiff went to the shop of E. & G. Burrell, at Little Falls, and there found the cutter in an unfinished state, and made a bargain with them for it, whereby they were to finish and deliver it to him within a week or ten days for $50, if finished in one style, and $55 if finished in another style, payable in lumber; and the plaintiff delivered, in part payment of the price, 2112 feet of lumber at $25 per thousand feet. On the 11th of January E. & G. Burrell failed, and made an assignment for the benefit of their creditors to the defendant, who took possession of the cutter, and on or about February 7, sold it at public auction, as assignee. After the bargain with the plaintiff, the cutter remained in the possession, first of E. & G. Burrell, and afterwards of the defendant, and at the time of the sale by the defendant, remained unfinished. There never was any delivery of the cutter to the plaintiff.

Halterline *v.* Rice.

*S. & R. Earl,* for the appellant.

I. The plaintiff could not rightfully recover without showing title to the cutter.

II. Upon the facts proved, it is claimed that the title was never in the plaintiff. There was nothing more than an executory contract to finish and deliver the cutter to the plaintiff; and for a breach of this contract, the Burrells were liable, and the plaintiff could come in under the assignment and claim his damages. (1 *Pars. on Cont.* 441. 2 *Kent's Com.* 495, 2d ed. *Hilliard on Sales,* 26, 27. *Bennett* v. *Platt,* 9 *Pick.* 558. *Andrews* v. *Durant,* 1 *Kern.* 35. *Comfort* v. *Kiersted,* 26 *Barb.* 472.) 1. The cutter was not finished. 2. The price was not determined, and could not be determined until the cutter was finished. 3. It was not to be delivered until finished. 4. The price to be paid was the price when finished, showing that he did not buy the cutter in its unfinished state. 5. There was no separate price for the cutter as it then was, and then a price for the labor and materials for finishing it. 6. What remained to be done to the cutter was of considerable importance, to wit, painting, trimming and some ironing, which would cost from $10 to $20. 7. If the Burrells had refused to finish the cutter, or had finished it in an unworkmanlike manner, the plaintiff would not have been obliged to take it. 8. If some one had stolen the cutter before it was finished, the loss would have fallen upon the Burrells, and it was at their risk until it was finished. 9. Until the cutter was substantially finished and delivered to the plaintiff, it could not have been taken on execution against him.

*G. A. Hardin,* for the respondent.

I. Halterline, the respondent, on the 4th of January, 1862, purchased from E. & G. Burrell the cutter in question, for which he paid them in full, by delivering to them 2112 feet of cherry lumber. The title to the cutter

vested, on the instant, in the respondent. And though he left it in the custody of the vendors, for the purpose of having it painted and trimmed, the Burrells would no more be liable for any subsequent loss or deterioration, than if the respondent had brought to them an old wagon or cutter he had used for years, to be retrimmed and re-painted. And in this case, they were not liable to the respondent for any loss or damage, not resulting from their carelessness or negligence. (*Lansing* v. *Turner*, 2 *John.* 13. 2 *Kent's Com.* 672, *marg.* 494. 2 *Bl. Com.* 448.)

II. The cutter, after the sale to the respondent, was recognized by Messrs. Burrell as the respondent's property, for E. Burrell, in his testimony, says, in his re-direct examination: "We received that lumber in payment for this cutter. We agreed to finish off the cutter within a week or ten days, for the plaintiff." It was selected out by the respondent, for the witness says, in the same re-direct examination: "There was no other article selected out by the plaintiff;" and "what E. & G. Burrell did on this, after the trade, was done for Halterline, under the agreement; some one called to see if Halterline's cutter was done," &c., proving most conclusively, that the vendors recognized the property of the respondent in this cutter, and that they intended to pass the title to the purchaser. The sale and delivery of the chattel was therefore as complete as if the respondent had taken the cutter from the shop and carried it away with him. (*Caum* v. *Bowne*, 2 *Cal.* 38. *Kimberly* v. *Patchin*, 19 *N. Y.* 330.)

III. It is a question of fact whether the parties understood and intended that the title to the property passed to the purchaser, and the court having found affirmatively on that point, its decision is conclusive, and this court will not be likely to disturb the findings. (*Draper* v. *Jones*, 11 *Barb.* 263. *Smith* v. *Lynes*, 1 *Seld.* 41.)

IV. If one sells an article and delivers it, the delivery will be none the less effectual because the vendor happens

to be employed to perform some additional work upon it, even at his own expense. (*Crofoot* v. *Bennet,* 2 *Comst.* 261. *Brewer* v. *Salisbury,* 9 *Barb.* 515.)

V. The cutter was selected and clearly identified, and the property passed to the respondent on his paying the price. (2 *Comst.* 261. 9 *Barb.* 515. *Brabin* v. *Hyde,* 30 *id.* 265, *and cases cited.*)

VI. In the case of *Andrews* v. *Durant,* (1 *Kern.* 45,) Judge Denio, in his opinion, says: " The argument for the defendant would be somewhat stronger if we could say that the amount to be advanced, at the several stages mentioned, was understood by the parties to be the price or equivalent for the labor and materials already expended." But in this case, the entire value of the chattel was paid; the purchaser paid in advance for the work and labor to be performed in improving the property purchased.

VII. The learned county judge has, in this case, very carefully and accurately examined the numerous authorities bearing upon the legal question involved in this case, and we submit has written a correct statement and conclusion therefrom, and his opinion, and the judgment in the court below ought to be sustained, by an affirmance of the judgment.

*By the Court,* MULLIN, J. It is a singular fact that the courts in England, have been, for centuries, striving to settle the law by which sales of chattels are governed. It is not yet settled, in that country, nor in this, whether the vendor or the vendee is owner of an article purchased of a mechanic, before completion, and the price paid, where there is no absolute delivery made to the purchaser. When I say it is not settled, I do not mean to say there is not a preponderance of authority in favor of the ownership of one of the parties, but that it is so conclusively settled as not to be open to question.

So long as courts permit intention to enter into the de-

termination of questions of this kind, so long will cases be left to be determined by their own peculiar facts and circumstances; and while that is the case, the law of sales will be involved in doubt, and parties to them in litigation.

The general rule is, that a sale is not complete, so as to vest title to the property purchased in the vendee until delivery, by the vendor. It is also a rule equally general, that title does not pass while anything remains to be done by the vendor in order to ascertain either the quantity or price of the thing agreed to be sold.

These rules apply not only to property *in esse*, but also to that which is thereafter to be manufactured. In *Atkinson et al.* v. *Bell et al.*, (15 *Eng. C. L.* 216.) A. having a patent for certain spinning machinery, received an order from B. to have some frames made for him. A. employed C. to make the frames for B., and informed the latter that he had done so. After the machines were completed, B. ordered them to be altered. They were completed according to the new order, and put in boxes for B., and C. notified B. that they were ready, but he refused to accept them. It was held that C. could not recover the price for goods bargained and sold, or for work, labor and materials. Bayley, J. said: "I cannot say that the property passed to the defendants, so as to enable the plaintiffs to recover on the counts for goods sold, or for work and labor. It is said there was an appropriation of these specific machines by the maker, and that the property thereby vested in the defendants. I think it did not pass. When goods are ordered to be made, while they are in progress the materials belong to the maker. The property does not vest in the one who gives the order, until the thing ordered is completed; and although while the goods are in progress the maker may intend them for the person ordering, still he may afterwards deliver them to another, and thereby vest the title in that other. * * * They were L.'s goods, although they were intended for the defendants, and

he had written to them so. If they had expressed their assent, this case would have been within *Rohde* v. *Thwaites.* (6 *B. & C.* 388,) and there would have been a complete appropriation, vesting the property in the defendants. But there was not any such assent to the appropriation, and therefore no action for goods bargained and sold was maintainable."

In *Maberly* v. *Sheppard*, (10 *Bing.* 99,) the defendant employed the plaintiff to construct a wagon, and while it was in the plaintiff's yard, unfinished, procured a third person to fix on the iron work, for which he paid. The defendant also purchased tilt from another person, which was carried to the plaintiff's yard and put on the wagon. It was held that there was no acceptance, within the statute of frauds. Tindal, Ch. J., speaking of the alleged acceptance of the wagon, says : " It is contended that the fact of the iron work used for the wagon having been purchased by the defendant of another person who assisted the plaintiff's men in putting it up, and charged the defendant for his time, is such an act of ownership, exercised upon the wagon by an agent of the defendant, as brings this case within the principle above referred to. It must be observed, however, that this was not an act done after the wagon was finished and capable of delivery, but merely whilst it was in progress; and that after such assistance had been rendered, and the iron work fixed, the wagon was left in the plaintiff's yard to be finished by him. If the wagon had been completed and ready for delivery, and the defendant had then sent workmen of his own to perform any additional work upon it, such conduct might have amounted to an acceptance."

In *Mixer* v. *Howarth*, (21 *Pick.* 205, the defendant went into the plaintiff's shop and selected a piece of cloth for lining a buggy. The plaintiff had on hand the body of a buggy nearly finished, but not lined. It was understood that the plaintiff was to finish the buggy for the defendant in two weeks. It was completed, and the defendant had

notice thereof, and was requested to take it away, but declined. An action was brought for work and labor, &c., the price of a carriage sold, and upon the special agreement. Shaw, Ch. J., delivering the opinion of the court, holds that the transaction was not a sale within the statute of frauds, and hence an agreement in writing was not necessary to make it a valid promise to pay. "It is very clear, we think, that by this contract no title passed to the defendant. The carriage contemplated to be sold did not then exist. It was to be constructed from materials partly wrought, indeed, but not put together. It was therefore essentially an agreement by the defendant with the plaintiff to build a carriage for him, and on his part to take it when finished and pay for at an agreed or a reasonable price." The court further held, in the case, that the remedy, in such a case, for not accepting the article is on the agreement.

*Andrews* v. *Durant*, (11 *N. Y.* 35,) recognizes the same general principles.

The only case cited by the respondent's counsel having any bearing on the question before us, is that of *Brown* v. *Salsbury*, (9 *Barb.* 511.) The learned justice who delivered the opinion in that case was unable to find an authority to support him; and it seems to me that the case is quite in opposition to a series of well considered cases, both in this country and in England, and is not law.

In *Chitty on Contracts*, 378, it is said, in the case of a contract to manufacture goods and then sell them, it is a general rule that no property in the material passes to the purchaser until the article has been finished and delivered, or is ready for delivery and appropriated to the benefit of, or set apart for, the purchaser with his assent, and accepted by him; and that even when the contract contains a specification of the dimensions and other particulars of the article to be manufactured, and fixes the precise mode of payment by months and days. (*See Laidler* v. *Burlinson*,

2 *Mees. & Wels.* 602 ; 4 *id.* 685 ; 2 *Pars. on Cont.* 334, *note f ; Bennett* v. *Platt,* 9 *Pick.* 558.)

It is said by the respondent's counsel that it was a question for the jury, to say whether or not there was a delivery of the cutter, and that they must have found that there was a delivery, and their finding is conclusive. There is not in the return a single word of evidence tending to show a delivery, or that either party contemplated a delivery till after the cutter was completed. The finding, on such evidence, that there was a delivery, cannot be of much force.

The judgments of the county court, and of the justice, must be reversed.