## William W. Cooke et al., Appellants, *v.* Walter Millard et al., Respondents.

Defendants, desiring to purchase a bill of lumber, went to plaintiffs' yard, where they were shown lumber of the desired quality, but which, to meet their requirements, needed to be dressed and cut into different sizes. They gave a verbal order for certain quantities and sizes, amounting, at the prices specified, to $918.22, to be taken from the lots examined by defendants. There was a much larger quantity of lumber in the yard, and no particular lumber was selected or set apart to fill the order. It was defendants' intention to purchase enough to fill out a boat load. After giving the order, defendants pointed out the piles from which they desired the lumber to be taken, and directed that when prepared it should be placed upon plaintiffs' dock and notice given of readiness to deliver. Plaintiffs filled the order, placed the lumber on their dock, and gave notice, as agreed. It was not removed and the next day it was destroyed by fire. In an action to recover the contract-price, *held,* that the contract was in its nature entire, and though executory was one of sale within the meaning of the statute of frauds; that the subsequent acts of defendants did not turn the executory contract into an executed one, and did not amount to an "acceptance and receipt" of the lumber so as to take the case out of the statute; that the title to the lumber, therefore, never became vested in defendants; and they were not liable.

The authorities upon the subject of what is a contract of sale under the statute collated, and the different views in regard thereto of the English, Massachusetts and New York courts, pointed out.

The authorities, also, as to what is an executed contract, and when "an acceptance and delivery" under the statute, collated.

*Parsons* v. *Loucks* (48 N. Y., 17), *Sewell* v. *Fitch* (8 Cow., 215), *Crofoot* v. *Bennett* (2 N. Y., 158), *Kimberly* v. *Patchin* (19 id., 330) distinguished; *Mead* v. *Case* (33 Barb., 202) questioned; *Morton* v. *Tibbett* (15 A. & E. [N. S.], 428) distinguished and questioned.

Where a chattel contracted for is at the time in existence, although the vendor is to do some work upon it to adapt it to the uses of the vendee, the contract will be deemed one of sale under the statute.

(Argued January 14, 1875; decided May term, 1875.)

Appeal from a judgment of the General Term of the Supreme Court, in the third judicial department, affirming a judgment in favor of defendant, entered upon the report of a referee. (Reported below, 5 Lans., 350.)

This action was brought to recover the price of certain

lumber, alleged to have been sold and delivered to the defendants.

The defence was that the contract was oral, and void within the statute of frauds, and that the lumber was never delivered to or accepted by the defendants.

The referee found, in substance, that the plaintiffs were copartners and wholesale lumber merchants, and proprietors of a planing mill, at Whitehall, N. Y., and that the defendants were also partners and lumber merchants, at New Hamburgh, on the Hudson. The course of business is, that the lumber is shipped from Whitehall by canal to Troy, and thence to New Hamburgh by the Hudson river. On the 5th day of September, 1865, the defendants being at Whitehall, and desiring to purchase certain kinds of lumber, in quantities to be specified, were shown by the plaintiffs the lumber then in their yard   This lumber was of the desired quality, but needed to be dressed and cut into the different sizes which they wished. There was much more lumber in the yard shown to the defendants than was requisite for their purposes. The defendants thereupon orally gave to the plaintiffs an order for certain quantities and sizes of lumber, at specified prices, amounting in the whole to $918.22. A memorandum of the order so agreed to was made by the plaintiffs, but was not subscribed by the defendants, or any one in their behalf. No particular lumber was selected or set apart to fill the order, nor was any part of it then in condition to be accepted or delivered. The defendants told the plaintiffs that one Percival, a forwarder at Whitehall, would send a boat to take the lumber, when notified that it was ready to be delivered. Percival, during the same season, and prior to September fifth, had taken up a boat for the defendants, and shipped a part of a load of lumber from the plaintiffs' dock, making up the residue from his own yard. He had frequently shipped lumber for the defendants. Under the course of trade, a boat could not be obtained to carry a part of a load of lumber from Whitehall to New Hamburgh, except for the price of a full load. To avoid paying such full price, arrangements had to

be made to fill out the load. The defendants knew of this when they made the order of September fifth. That order only amounted to one-half a boat load. Percival then had a pile of lumber (17,671 feet of culls) to ship to the defendants, which was not any part of the lumber to be dressed by the plaintiffs. The lumber ordered on September fifth was to be taken from the lots examined by the defendants, and the lumber dressed and piled on the plaintiffs' dock, was, in fact, all taken from the lumber shown and looked at as already stated. After the verbal order or bargain already referred to, the defendants went into the lumber yard with the plaintiffs' foreman (Mr. Martin), and pointed out to him some of the piles from which they desired the lumber to be manufactured, and directed the plaintiffs to put the lumber, when it was ready, on the plaintiffs' dock and to notify Percival; and told the plaintiffs that when this was done, Percival, who was also a lumber dealer, would take up a boat and ship the lumber, and make out the load from his yard. Subsequently, and on the fifteenth of September, the lumber having been prepared and dressed, according to the oral agreement, it was piled upon the dock of the plaintiffs at Whitehall, along the front of the planing mill, and was, on the sixteenth of that month, measured by the plaintiffs, and was in all respects ready for delivery by them, according to the oral agreement.

The plaintiffs, on the same day, gave notice to Percival that the lumber was ready for delivery, and requested him to send a boat and take it away. Percival had not, in fact, been notified by the defendants, or otherwise, of the arrangement that he was to ship the lumber, and paid no attention to the notice given him by plaintiffs. On the other hand, the plaintiffs did not ascertain that Percival did not know of the arrangement, which the defendants had told them they would make with Percival as to shipping the lumber, until after the fire hereinafter mentioned. On the next day (Sunday, the seventeenth), the lumber being still on the dock as it was at the time Percival was notified, was consumed by an accidental fire, with the planing mill and much other property.

Upon these facts, the referee decided, as matter of law, that the contract was void, and ordered judgment for the defendants. Judgment entered accordingly.

Further facts appear in the opinion.

*Martin W. Cooke* for the appellants. The contract was not within the statute of frauds. (*Groves* v. *Buck*, 3 M. & S., 78; *Sewall* v. *Fitch*, 8 Cow., 215; *Webster* v. *Zilby*, 52 Barb., 483; *Stephens* v. *Santee*, 51 id., 532; *Mead* v. *Case*, 33 id., 532, 545; *Downs* v. *Ross*, 23 Wend., 270; *Parsons* v. *Loucks*, 48 N. Y., 17.) There was a sufficient acceptance and receipt to take the case out of the statute of frauds. (*Waldron* v. *Romaine*, 22 N. Y., 368; *Groat* v. *Gile*, 51 id., 431; *Elmore* v. *Stone*, 1 Taunt., 458; *Saunders* v. *Topp*, 4 Exch., 389; *Morton* v. *Tibbetts*, 15 Ad. & El., 428; *Bushell* v. *Wheeler*, id., 441; *Marvin* v. *Wallis*, 6 El. & B., 726; *Cusack* v. *Robinson*, 1 B. & S., 299; *Currie* v. *Anderson*, 2 El. & El., 502; *Smith* v. *Hudson*, 118 E. C. L.,     ; *People* v. *Haynes*, 14 Wend., 546; *Glen* v. *Whittaker*, 51 Barb., 451; *Cross* v. *O'Donnell*, 44 N. Y., 661; *Marsh* v. *Rouse*, id., 643; *Lowry* v. *Tew*, 3 Barb. Ch., 407, 413; *Ryan* v. *Dox*, 34 N. Y., 307.) The object of the clause of the statute "unless the buyer shall accept and receive part of the goods" is to require such proof of the existence of the contract as will be an impediment to fraud, perjury and mistake. (*Shindler* v. *Houston*, 1 Comst., 261; *Allis* v. *Read*, 45 N. Y., 142; *Hawley* v. *Keeler*, 53 id., 114; *Eden* v. *Duffield*, 1 Ad. & E. [N. S.], 302; *Marvin* v. *Wallis*, 6 E. & B., 726; *Taylor* v. *Wakefield*, id., 765; *Morton* v. *Tibbetts*, 15 Ad. & E. [N. S.], 428; *Caulkins* v. *Hellman*, 47 N. Y., 449; *Brabin* v. *Hyde*, 32 id., 519; *Baltzen* v. *Nicolay*, 53 id., 467; *Hawley* v. *Keeler*, id., 114; *Stone* v. *Browning*, 51 id., 211.)

*Thompson & Weeks* for the respondents. The contract was void under the statute of frauds. (*Shindler* v. *Houston*, 1 Comst., 261; 3 J. R., 421; 5 Hill, 205; Chit. on Con., 390; Hil. on Sales, 135; 10 Bing., 102, 384; *Baldy* v. *Parker*, 2 B. & C., 137; *Harris* v. *Pratt*, 17 N. Y., 250.) Nothing

plaintiffs did vested the title in defendants or supplied the
defect of a want of acceptance. (10 Bing., 376; 25 E. C. L.,
43; *Joyce* v. *Adams*, 8 N. Y., 291; *Comfort* v. *Kiersted*, 26
Barb., 472; 20 L. and Eq., 524; 22 id., 91; *Hanson* v. *Armi-
tage*, 5 B. & Ald., 557; *Rogers* v. *Phillips*, 40 N. Y., 510;
1 Taunt., 458; 69 E. C. L., 428, 441; 101 E. C. L., 299; 105
id., 592; *People* v. *Haynes*, 14 Wend., 546; 51 Barb., 451; 51
N. Y., 211; *Bates* v. *Costar*, 1 Hun, 400.)

DWIGHT, C. No exceptions were taken in this cause, except
to the conclusions of law derived by the referee from the facts
as found in the report. There are but two questions to be
considered: One is, whether the contract is within the statute
of frauds; the other is, if it be held that it is within the statute,
were the acts, done by the parties, sufficient to comply with
its terms, so as to make the contract enforceable in a court of
justice?

In order to determine whether the contract is within the
statute, it is important briefly to state the exact acts which the
plaintiffs were to perform.

The contract was plainly executory in its nature. There
were no specific articles upon which the minds of the buyer
and seller met, so that it could be affirmed that a title passed
at the time of the contract. The seller was to select, from the
mass of lumber in his yard, certain portions that would com-
ply with the buyer's order. The purposes of the parties could
not even be accomplished by the process of selection. The
lumber must be put in a condition to answer the order. It
must be dressed and cut into required sizes. The contract
called for distinct parcels of surface pine boards, clapboards
and matched ceiling. Part of the lumber was surfaced, and
a portion of it still in the rough. The clapboards were manu-
factured from stuff one and a quarter-inch thick. It had to be
split, surfaced and rabbeted. The order for the various items
was a single one, there being 15,441 feet of the surface pine,
10,144 feet of clapboards, and 8,000 feet of matched ceiling.
The surface boards and the ceiling were in existence, and only

needed dressing to comply with the order. Whether the clap-boards can be deemed to have been in existence, may be more doubtful. If a part of the order is within the statute of frauds, and a portion of it without it, the whole transaction must be deemed to be within it, as an entire contract cannot, in this case, be divided or apportioned. (*Cooke* v. *Tombs*, 2 Anst., 420; *Chater* v. *Beckett*, 7 T. R., 201; *Mechelen* v. *Wallace*, 7 A. & E., 49; *Thomas* v. *Williams*, 10 B. & C., 664; *Loomis* v. *Newhall*, 15 Pick., 159.) I think it clear that the contract was in its nature entire. It was in evidence that the intention was to buy enough, in connection with what Percival had on hand, to make up a boat load. This could only be accomplished by using the entire amount of the order. Accordingly, even if the contract for the clapboards was not a sale, it cannot be separated from the rest of the order, and the cases above cited are applicable.

The question is thus reduced to the following proposition: Is a contract which is, in form, one of sale of lumber then in existence for a fixed price, where the seller agrees to put it into a state of fitness to fill the order of the purchaser, his work being included in the price, in fact a contract for work and labor and not one of sale, and, accordingly, not within the statute of frauds?

The New York statute is made applicable to the "sale of any goods, chattels, or things in action" for the price of fifty dollars or more. The words "goods and chattels" are, literally taken, probably more comprehensive than the expressions in the English statute, "goods, wares and merchandise." It will be assumed, however, in this discussion, that they are equivalent.

There are, at least, three distinct views as to the meaning of the words in the statute. These may be called, for the sake of convenience, the English, the Massachusetts and the New York rules, as representing the decisions in the respective courts.

The English rule lays especial stress upon the point, whether the articles bargained for, can be regarded as goods capable of sale by the professed seller at the time of delivery, without any reference to the inquiry whether they were in existence

at the time of the contract or not. If a manufacturer is to produce an article which at the time of the delivery could be the subject of sale by him, the case is within the statute of frauds. The rule excludes all cases where work is done upon the goods of another, or even materials supplied or added to the goods of another. Thus, if a carriage-maker should repair my carriage, both furnishing labor and supplying materials, it would be a contract for work and labor, as the whole result of his efforts would not produce a chattel which could be the subject of sale *by him.* If, on the other hand, by the contract he lays out work or materials, or both, so as to produce a chattel which he could sell to me, the contract is within the statute. This conclusion has been reached only after great discussion and much fluctuation of opinion, but must now be regarded as settled. The leading case upon this point is *Lee* v. *Griffin* (1 Best and Smith, 272 ; Benjamin on Sales, 77). The action was there brought by a dentist to recover twenty-one pounds sterling for two sets of artificial teeth, made for a deceased lady of whose estate the defendant was executor. The court held this to be the sale of a chattel within the statute of frauds. BLACK-BURN, J., stated the principle of the decision in a clear manner : "If the contract be such *that it will result in the sale of a chattel,* then it constitutes a sale, but if the work and labor be bestowed in such a manner as that the result would not be any thing which could properly be said to be the subject of sale, the action is for work and labor."

The Massachusetts rule, as applicable to goods manufactured or modified after the bargain for them is made, mainly regards the point whether the products can, *at the time stipulated for delivery,* be regarded as " *goods, wares* and *merchandise,*" in the sense of being generally marketable commodities, made by the manufacturer. In that respect, it agrees with the English rule. The test is not the non-existence of the commodity at the time of the bargain. It is, rather, whether the manufacturer produces the article in the general course of his business or as the result of a special order. (*Goddard* v. *Binney*, 115 Mass., 450.) In this very recent

case, the result of their decisions is stated in the following terms: "A contract for the sale of articles then existing, or such as the vendor in the ordinary course of his business manufactures or procures for the general market, whether on hand at the time or not, is a contract for the sale of goods to which the statute applies. But, on the other hand, if the goods are to be manufactured especially for the purchaser, and upon his special order, and not for the general market, the case is not within the statute." Under this rule, it was held in *Gardner* v. *Joy* (9 Met., 177), that a contract to buy a certain number of boxes of candles at a fixed price per pound, which the vendor said he would manufacture and deliver in about three months, was held to be a contract of sale. On the other hand, in *Goddard* v. *Binney* (*supra*), the contract with a carriage manufacture was, that he should make a buggy for the person ordering it, that the color of the lining should be drab, and the outside seat of cane, and have on it the monogram and initials of the party for whom it was made. This was held not to be contract of sale within the statute. (See, also, *Mixer* v. *Howarth*, 21 Pick., 205; *Lamb* v. *Crafts*, 12 Met., 353; *Spencer* v. *Cone*, 1 Met., 283.)

The New York rule is still different. It is held here by a long course of decisions, that an agreement for the sale of any commodity not in existence at the time, but which the vendor is to manufacture or put in a condition to be delivered, such as flour from wheat not yet ground, or nails to be made from iron belonging to the manufacturer, is not a contract of sale. The New York rule lays stress on the word *sale*. There must be a sale at the time the contract is made. The latest and most authoritative expression of the rule is found in a recent case in this court. (*Parsons* v. *Loucks*, 48 N. Y., 17, 19.) The contrast between *Parsons* v. *Loucks*, in this State, on the one hand, and *Lee* v. *Griffin* (*supra*), in England on the other is, that in the former case, the word *sale* refers to the time of entering into the contract, while in the latter, reference is had to the time of delivery, as contemplated by the parties. If at that time it is a

chattel it is enough, according to the English rule. Other cases in this State agreeing with *Parsons* v. *Loucks*, are *Crookshank* v. *Burrel* (18 J. R., 58) ; *Sewall* v. *Fitch* (8 Cow., 215) ; *Robertson* v. *Vaughn* (5 Sandf. S. C., 1) ; *Parker* v. *Schenck* (28 Barb., 38). These cases are based on certain old decisions in England, such as *Towers* v. *Osborne* (1 Strange, 506), and *Clayton* v. *Andrews* (4 Burrow, 2101), which have been wholly discarded in that country.

The case at bar does not fall within the rule in *Parsons* v. *Loucks*. The facts of that case were, that a manufacturer agreed to make for the other party to the contract two tons of book paper. The paper was not in existence, and, so far as appears, not even the rags, " except so far as such existence may be argued from the fact that matter is indestructible." So in *Sewall* v. *Fitch* (*supra*), the nails which were the subject of the contract were not then wrought out, but were to be made and delivered at a future day.

Nothing of this kind is found in the present case. The lumber, with the possible exception of the clapboards, was all in existence when the contract was made. It only needed to be prepared for the purchaser — dressed and put in a condition to fill his order. The court, accordingly, is not hampered in the disposition of this cause by authority, but may proceed upon principle.

Were this subject now open to full discussion upon principle, no more convenient and easily understood rule could be adopted than that enunciated in *Lee* v. *Griffin*. It is at once so philosophical, and so readily comprehensible, that it is a matter of surprise that it should have been first announced at so late a stage in the discussion of the statute. It is too late to adopt it in full in this State. So far as authoritative decisions have gone, they must be respected, even at the expense of sound principle. The court, however, in view of the present state of the law, should plant itself, so far as it is not precluded from doing so by authority, upon some clearly intelligible ground, and introduce no more nice and perplexing distinctions. I think that the true rule to be applied in this

State is, that when the chattel is in existence, so as not to be governed by *Parsons* v. *Loucks* (*supra*), the contract should be deemed to be one of sale, even though it may have been ordered from a seller who is to do some work upon it to adapt it to the uses of the purchaser. Such a rule makes but a single distinction, and that is between existing and non-existing chattels. There will still be border cases where it will be difficult to draw the line, and to discover whether the chattels are in existence or not. The mass of the cases will, however, readily be classified. If, on further discussion, the rule in *Lee* v. *Griffin* should be found most desirable as applicable to both kinds of transactions, a proper case will be presented for the consideration of the legislature.

The view that this case is one of sale is sustained by *Smith* v. *The Central Railroad Company* (4 Keyes, 180), and by *Downs & Skillinger* v. *Ross* (23 Wend., 270).

In the first of these cases, there was a contract for the sale and delivery of a quantity of wood, to be cut from trees standing on the plaintiff's land. The court held that it could not be treated as an agreement for work and labor in manu facturing fire-wood out of standing trees. The cases already cited were distinguished in the fact that no change in the thing sold and to be delivered was contemplated, and that the transaction could be regarded as a sale in perfect consistency with the cases which hold that where the substance of the contract consists in the act of converting materials into a new and wholly different article, it is an agreement for work and labor. It was further considered that the case of *Towers* v. *Osborne* (1 Strange, 506), where an agreement for the manufacture of a chariot was a contract for work and labor, was extreme in its nature, and was not to be carried any further. (P. 200.) The cases of *Garbutt* v. *Watson* (5 B. & A., 613) and *Smith* v. *Surman* (9 B. & C., 561) were cited with approval. In *Garbutt* v. *Watson*, a sale of flour by a miller was held within the statute, although not ground when the bargain was made.

In *Downs, etc.*, v. *Ross*, there was a contract for the sale of

750 bushels of wheat, 250 of the quantity being in a granary, and the residue unthrashed, but which the vender agreed to get ready and deliver. The court held the contract to be within the statute of frauds, notwithstanding that the act of threshing was to be done by the vendor. The rule that governed the court was, that if the thing sold exist at the time *in solido*, the mere fact that something remains to be done to put it in a marketable condition will not take the contract out of the operation of the statute. (P. 272.) This proposition is in marked contrast to the view expressed by COWEN, J., in a dissenting opinion. His theory was, that where the article which forms the subject of sale is understood by the parties to be defective in any particular which demands the finishing labor of the vender in order to satisfy the bargain, it is a contract for work and labor, and not of sale. The two theories (where the goods exist at the time of sale), have nowhere been more tersely and distinctly stated than in the conflicting opinions of BRONSON and COWEN, JJ., in this case. (See, also, *Courtright* v. *Stewart*, 19 Barb., 455.)

The fallacy in the proposition of COWEN, J., is in assuming that there is any "*work and labor*" done for the vendee. All the work and labor is done on the vendor's property to put it in a condition to enable him to sell it. His compensation for it is found in the price of the goods sold. It is a juggle of words to call this "a mixed contract of sale and work and labor." When the goods leave the vendor's hands and pass over to the vendee, they pass as chattels under an executed contract of sale. While any thing remained to be done the contract was executory. There is abundance of authority for maintaining that a contract in its origin executory may, by the performance of acts under its terms, by one of the parties, become, in the end, executed. (*Rohde* v. *Thwaites*, 3 B. & C., 388; Benjamin on Sales, chap. 5, and cases cited.)

The cases of *Donovan* v. *Wilson* (26 Barb., 138), and *Parker* v. *Schenck* (28 id., 38) are to be upheld as falling within the principle of *Parsons* v. *Loucks* (*supra*). Both of these cases concerned articles not in existence, but to be pro-

duced by the manufacturer; in the one case beer was to be manufactured, and in the other a brass pump. So in *Passaic Manufacturing Company* (3 Daly, 495), the contract was for the manufacture and delivery of fifty warps. None of these were in existence when the order was received. While the case appears to fall within the rule of *Parsons* v. *Loucks*, the eminent judge who wrote an elaborate opinion expressing the views of the court would seem to rely upon the Massachusetts rule rather than our own. Whatever view might be entertained of the soundness of that distinction it is now too late to adopt it here, and the case cannot be sustained on that ground.

The only case in our reports appearing to stand in the way of the conclusion arrived at in this cause is *Mead* v. *Case* (33 Barb., 202). The court in that case recognized the distinction herein upheld. The only doubt about the case is, whether the court correctly applied the rule to the facts. These were that several pieces of marble put together in the form of a monument were standing in the yard of a marble cutter. That person agreed with a buyer to polish, letter and finish the article as a monument, and to dispose of it for an entire price — $200. The court held that there was no *monument in existence* at the time of the bargain. There were pieces of stone in the similitude of a monument, and that was all.

It is unnecessary to quarrel with this case. If unsound, it is only a case of a misapplication of an established rule. If sound, it is a so-called "border case," showing the refinements which are likely to arise in applying to various transactions the rule adopted in *Sewall* v. *Fitch*, and kindred cases. It is proper, however, to say that the notion that such an arrangement of marble placed in a cemetery over a grave can not be regarded as a monument, in the absence of an inscription, seems highly strained. Then there could not be a memorial church without an inscription. Then it could not have been said of Sir Christopher Wren, in his relation to one of his great architectural productions, "*Si quæris monu-*

*mentum, circumspice."*    It would seem to be enough if the
monument reminds the passer by of him whom it is intended
to commemorate, and this might be by tradition, inscrip-
tions on adjoining or neighboring objects, or otherwise.

In the view of these principles, the defendants had the
right to set up the statute of frauds.  I think that this was
so even as to the clapboards.  Although not strictly in exist-
ence as clapboards, they fall within the rule in *Smith* v. *Cen-
tral Railroad Company.*  They were no more new products
than was the wood in that case.  There was simply to be
gone through with a process of dividing and adapting exist-
ing materials to the plaintiffs' use.  It would be difficult to
distinguish between splitting planks into clapboards, and trees
into wood.  No especial skill is required, as all the work is
done by machinery in general use, and readily managed by
any producers of ordinary intelligence.  The case bears no
resemblance to that of *Parsons* v. *Loucks,* where the pro-
duct was to be created from materials in no respect existing
in the form of paper.  The cases would have been more
analogous had the contract in that case been to divide large
sheets of paper into small ones, or to make packages of
envelopes from existing paper.  In *Gilman* v. *Hall* (36 N.
H., 311) it was held that a contract for sheep pelts to be taken
from sheep was a contract for things in existence and a
sale.

The next inquiry is, whether there have been sufficient
acts done on the part of the buyers to comply with the
statute.  In order to properly solve this question, it is neces-
sary to look more closely into the nature of the contract.  As
has been already suggested, the contract was in its origin
executory.  It called for selection on the part of the sellers
from a mass of materials.  At the time of the bargain there
was no sale.  There was at most only an agreement to sell.
The plaintiffs, however, lay much stress on the fact that *after*
the oral bargain and after the defendants had inspected the
lumber, they gave directions, also oral, to the plaintiffs to
place the lumber after it had been made ready for delivery

upon the dock and to give notice to Percival. They urge that the subsequent compliance with these directions by the plaintiffs satisfy the terms of the statute.

It will be observed that all of these directions were given while the contract was still wholly executory, and before any act of selection had been performed by the plaintiffs. It will thus be necessary to consider whether these directions are sufficient to turn the executory contract of sale into an executed one, independent of the statute of frauds, and afterwards to inquire whether there was any sufficient evidence of "an acceptance and receipt" of the goods to take the case out of the statute. These questions are quite distinct in their nature and governed by different considerations: (1.) If the contract had been for goods less than fifty dollars in value, or for more than that amount, and ordered by the defendants in writing, it would still have been executory in its nature, and would have passed no specific goods. It would have been an agreement to sell and not a sale. The case would not have fallen within such authorities as *Crofoot* v. *Bennett* (2 N. Y., 258) and *Kimberly* v. *Patchin* (19 N. Y., 330). Since the goods could not have been identified at all, except by the act of the seller in selecting such as would comply with the order, nor could the purposes of the contract have been performed except by the labor of the plaintiffs in adapting the goods to the defendants' use, the case falls within a rule laid down by Mr. Blackburn in his work on Sales (pp. 151, 152): "Where, by the agreement, the vendor is to do any thing to the goods for the purpose of putting them into that state in which the purchaser is to be bound to accept them, or as it is sometimes worded, into a deliverable state, the performance of these things shall, in the absence of circumstances indicating a contrary intention, be taken to be a condition precedent to the vesting of the property." (*Acraman* v. *Morrice*, 8 C. B., 449; *Gillett* v. *Hill*, 2 C. & M., 530; *Campbell* v. *Mersey Docks Company*, 14 C. B. [N. S.], 412.)

Proceeding on the view that this was an executory contract, it might still pass into the class of executed sales by acts " of

subsequent appropriation.". In other words, if the subsequent acts of the seller, combined with evidence of intention on the part of the buyer, show that specific articles have been set apart in performance of the contract, there may be an executed sale and the property in the goods may pass to the purchaser. (Blackburn on Sales, 128 ; Benjamin on Sales, chap. 5 ; *Fragano* v. *Long*, 4 B. & C., 219 ; *Rohde* v. *Thwaites*, 6 id., 388 ; *Aldridge* v. *Johnson*, 7 E. & B., 885 ; *Calcutta Company* v. *De Mattos*, 33 L. J. [Q. B.], 214, in Ex. Chamb.) This doctrine requires the assent of both parties, though it is held that it is not necessary that such assent should be given by the buyer subsequently to the appropriation by the vendor. It is enough that the minds of both parties acted upon the subject and assented to the selection. The vendor may be vested with an implied authority by the vendee to make the selection and thus to vest the title in him. (*Browne* v. *Hare*, 3 H. & N., 484 ; S. C., 4 id., 822.) This doctrine would be applicable to existing chattels where a mere selection from a mass of the same kind was requisite. On the other hand, if the goods are to be manufactured according to an order, it would seem that the mind of the purchaser after the manufacture was complete, should act upon the question whether the goods had complied with the contract. (See *Mucklow* v. *Mangles*, 1 Taunt., 318 ; *Bishop* v. *Crawshay*, 3 B. & C., 415 ; *Atkinson* v. *Bell*, 8 id., 277.) This point may be illustrated by the case of a sale by sample, where the seller agrees to select from a mass of products certain items corresponding with the sample, and forward them to a purchaser. The act of selection by the vendor will not pass the title, for the plain and satisfactory reason, that the purchaser has still remaining a right to determine whether the selected goods correspond with the sample. (*Jenner* v. *Smith*, Law Rep., 4 C. P., 270.) In this case the plaintiff at a fair, orally contracted to sell to the defendant two pockets of hops, and also two other pockets to correspond with a sample, which were lying in a warehouse in London, and which he was to forward. On his return to London, he selected two

out of three pockets which he had there, and directed them to be marked to "wait the buyer's order." The buyer did no act to show his acceptance of the goods. The court held, that the appropriation was neither originally authorized nor subsequently assented to by the buyer, and that the property did not pass by the contract. Brett, J., put in a strong form the objection to the view that the buyer could have impliedly assented to the appropriation by the seller. It was urged, he said "that there was evidence that by agreement between the parties, the purchaser gave authority to the seller to select the two pockets for him. If he did so, he gave up his power to object to the weighing and to the goods not corresponding with the sample; for he could not give such authority and reserve his right so to object; and indeed it has not been contended that he gave up those rights. That seems to me to be conclusive to show that the defendant never gave the plaintiff authority to make the selection so as to bind him. Under the circumstances, therefore, it is impossible to say that the property passed." (P. 278.) The same general principle was maintained in *Kein* v. *Tupper* (52 N. Y., 550), where it was held, that the act of the vendor putting the goods in a state to be delivered did not pass the title, so long as the acceptance of the vendee, provided for under the terms of the contract, had not been obtained.

The result is, that if this sale, executory as it was in its nature, had not fallen within the statute of frauds, there would have been no sufficient appropriation by the vendor to pass the title. The transaction, so far as it went, was, even at common law, an agreement to sell and not an actual sale.

(2.) But even if it be assumed that this would have been an executed contract of sale in its own nature, without reference to the statute of frauds, was there "an acceptance and a receipt" of the goods, or a part of them, by the buyer, so as to satisfy the statute?

The acceptance and receipt are both necessary. The contract is not valid unless the buyer does both. These are two distinct things. There may be an actual receipt without an

acceptance, and an acceptance without a receipt. The receipt of the goods is the act of taking possession of them. When the seller gives to the buyer the actual control of the goods, and the buyer accepts such control, he has actually received them. Such a receipt is often an evidence of an acceptance, but it is not the same thing. Indeed, the receipt by the buyer may be, and often is, for the express purpose of seeing whether he will accept or not. (Black. on Sales, 106 ; see *Brand* v. *Focht*, 3 Keyes, 409 ; *Stone* v. *Browning*, 51 N. Y., 211.)

There are some *dicta*, of various judges, cited by the plaintiffs to the effect that acceptance and receipt are equivalent. (Per CROMPTON, J., and COCKBURN, Ch. J., in *Castle* v. *Sworder*, 6 H. & N., 832 ; per EARLE, J., in *Marvin* v. *Wallis*, 6 E. & B., 726.) These remarks cannot be regarded as of any weight, being contrary to the decided current of authority. Indeed, a late and approved writer says : " It may be confidently assumed, however, that the construction which attributes distinct meaning to the two expressions, ' acceptance ' and ' actual receipt,' is now too firmly settled to be treated as an open question, and this is plainly to be inferred from the opinions delivered in *Smith* v. *Hudson*" (6 B. & S., 436 ; Benj. on Sales).

It cannot be conceded that there was any acceptance in the present case by reason of the acts and words occurring between the parties *after* the parol contract, and before the goods were prepared for delivery. There could be no acceptance without the assent of the buyers to the articles in their changed condition, and as adapted to their use. If the case had been one of specific goods to be selected from a mass without any preparation to be made, and nothing to be done by the vendor but merely to select, the matter would have presented a very different aspect. This distinction is well pointed out by WILLES, J., in *Bog Lead Company* v. *Montague* (10 C. B. [N. S.], 481). In this case, the question turned upon the meaning of the word " acceptance," in another statute, but the court proceeded on the analogies supposed to be derived from the construction of the same word in the statute of frauds. The question was as to what was necessary to constitute an " acceptance " of shares

in a mining company, under 19 and 20 Victoria (chap. 47). The court having likened the case to that of a sale of chattels, said : "It may be that in the case of a contract for the purchase of unascertained property to answer a particular description, no acceptance can be properly said to take place before the purchaser has had an opportunity of rejection.   In such a case, the offer to purchase is subject not only to the assent or dissent of the seller, but also to the condition that the property to be delivered by him shall answer the stipulated description. A right of inspection to ascertain whether such condition has been complied with, is in the contemplation of both parties to such a contract; and no complete and final acceptance, so as irrevocably to vest the property in the buyer, can take place before he has exercised or waived that right.   In order to constitute such a final and complete acceptance, the assent of the buyer should *follow*, not *precede*, that of the seller.   But where the contract is for a specific, ascertained chattel, the reasoning is altogether different.   Equally, where the offer to sell and deliver has been first made by the seller and afterwards assented to by the buyer, and where the offer to buy and accept has been first made by the buyer and afterwards assented to by the seller, the contract is complete by the assent of both parties, and it is a contract the expression of which testifies that the seller has agreed to sell and deliver, and the buyer to buy and accept the chattel."   (Pages 489, 490.)

This view is confirmed by *Maberley* v. *Sheppard* (10 Bing., 99).   That was an action for goods sold and delivered, and it was proven that the defendant ordered a wagon to be made for him by the plaintiff, and, *during the progress of the work*, furnished the iron work and sent it to the plaintiff, and sent a man to help the plaintiff in fitting the iron to the wagon, and bought a tilt and sent it to the plaintiff to be put on the wagon.   It was insisted, on these facts, that the defendants had exercised such a dominion over the goods sold as amounted to an acceptance.   The court, per TINDAL, Ch. J., held that the plaintiff had been rightly nonsuited, because the acts of the defendant had not been done after the

wagon was finished and capable of delivery, but merely while it was in progress, so that it still remained in the plaintiff's yard for further work until it was finished. The court added : "If the wagon had been completed and ready for delivery, and the defendant had then sent a workman of his own to perform any additional work upon it, such conduct on the part of the defendant might have amounted to an acceptance." (See, also, Benjamin on Sales, chap. 4, and cases cited.)

The plaintiffs, in the case at bar, rely much upon the decision in *Morton* v. *Tibbett* (15 Ad. & El. [N. S.], 428). They maintain that this case clearly establishes that there may be an acceptance and receipt of goods by a purchaser, within the statute of frauds, although he has had no opportunity of examining them, and although he has done nothing to preclude himself from objecting that they do not correspond with the contract.

The expressions in *Morton* v. *Tibbett* are not to be pressed any further than the facts of the case require. The buyer of wheat by sample had sent a carrier to a place named in a verbal contract between him and the seller on August twenty-fifth. The wheat was received on board of one of the carrier's lighters for conveyance by canal to Wisbeach, where it arrived on the twenty-eighth. In the meantime, it had been resold by the buyer, by the same sample, and was returned by the second purchaser because found to be of short weight. The defendant then wrote to the plaintiff on the thirtieth also rejecting it for short weight. An action was brought for goods bargained and sold. There was a verdict for plaintiff, with leave to move for a nonsuit. The question for the appellate court was, whether there was any evidence that the defendant had accepted and received the goods so as to render him liable as buyer. The court held that the acceptance under the statute was not an act subsequent to the receipt of the goods, but must precede, or, at least, be contemporaneous with it, and that there might be an acceptance to satisfy the statute, though the purchaser might, on other grounds, disaffirm the contract.

*Morton* v. *Tibbett* decides no more than this, viz., that there may be a conditional acceptance. It is as if the purchaser had said: "I take these goods on the supposition that they comply with the contract. I am not bound to decide that point at this moment. If, on examination, they do not correspond with the sample, I shall still return them under my common-law right, growing out of the very nature of the contract, to declare it void, because our minds never met on its subject-matter — *non in haec foedera veni.*" It is not necessary to decide whether this distinction is sound. It is enough to say that it is intelligible. The case, in no respect, decides that there can be an acceptance under the statute of frauds without a clear and distinct intent, or that unfinished articles can be presumed to be accepted before they are finished. The act of acceptance was clear and unequivocal. There was a distinct case of intermeddling with the goods in the exercise of an act of ownership — a fact entirely wanting in the case at bar. The proof of acceptance was the act of resale before examination. The point of the decision is, that this was such an exercise of dominion over the goods as is inconsistent with a continuance of the rights of property in the vendor, and therefore evidence to justify a jury in finding acceptance as well as actual receipt by the buyer. (*Hunt* v. *Hecht*, 8 Exch., 814.)

Even when interpreted in this way, *Morton* v. *Tibbett* cannot be regarded as absolutely settled law in England. (See *Coombs* v. *Bristol and Exeter Railway Company*, 3 H. & N., 510; *Castle* v. *Sworder*, 6 id., 832.) The Court of Queen's Bench recognizes it, while the Court of Exchequer has not received it with favor. Later cases distinctly hold that the acceptance must take place after an opportunity by the vendee to exercise an option, or after the doing of some act waiving it. BRAMWELL, B., said, in *Coombs* v. *The Bristol and Exeter Railway Company:* "The cases establish that there can be no acceptance where there can be no opportunity for rejecting." All the cases were reviewed in *Smith* v. *Hudson* (6 Best & Smith, 431, A. D. 1865), where *Hunt* v. *Hecht* was approved.

The two last cited cases disclose a principle applicable to the case at bar.

In *Hunt* v. *Hecht* the defendant went to the plaintiff's warehouse and there inspected a heap of ox bones, mixed with others inferior in quality. The defendant verbally agreed to purchase those of the better quality, which were to be separated from the rest, and ordered them to be sent to his wharfinger. The bags were received on the ninth and examined next day by the defendant, and he at once refused to accept them. There was held to be no acceptance. The case was put upon the ground that no acceptance was possible till after separation, and there was no pretence of an acceptance after that time. Martin, B., said that an acceptance, to satisfy the statute, must be something more than a mere receipt. It means some act done after the vendee has exercised or had the means of exercising his right of rejection.

In *Smith* v. *Hudson* (*supra*) barley was sold on November 3, 1863, by sample, by an oral contract. On the seventh it was taken by the seller to a railway station, where he had delivered grain to the purchaser on several prior dealings, and where it was his custom to receive it from other sellers. The barley was left at the freight-house of the railway, consigned to the order of the purchaser. It was the custom of the trade for the buyer to compare the sample with the bulk as delivered, and if the examination was not satisfactory to reject it. This right continued in the present case, notwithstanding the delivery of the grain to the railway company. On the ninth the purchaser became bankrupt, and on the eleventh the seller notified the stationmaster not to deliver the barley to the purchaser or his assignees. The court held that there was no *acceptance* sufficient to satisfy the statute. The most that could be said was, that the delivery to the company, considered as an agent of the buyer, was a *receipt*. It could not be claimed that it was an acceptance, the carrier having no implied authority to accept. The buyer had a right to see whether the bulk was according to the sample, and until he had exercised that right there was no acceptance. (Opin. of Cockburn, Ch. J., 446;

see, also, *Caulkins* v. *Hellman*, 47 N. Y., 449; *Halterline* v. *Rice*, 62 Barb., 593; *Edwards* v. *Grand Trunk Railway Co.*, 48 Me., 37; S. C., 54 id., 111.)

The case at bar only differs from these cases in the immaterial fact that the defendants, after the verbal contract was made, gave verbal directions as to the disposition which should be made of the goods after they were put into a condition ready for delivery. All that subsequently passed between them was mere words, and had not the slightest tendency to show a waiver of the right to examine the goods to see if they corresponded with the contract. Whatever effect these words might have had in indicating an acceptance, if the goods had been specific and ascertained at the time of the directions (see *Cusack* v. *Robinson*, 7 Lond. Jurist [N. S.], 542), they were without significance under the circumstances, as the meeting of the minds of the parties upon the subject to be selected was necessary. (*Shepherd* v. *Pressey*, 32 N. H., 57.) In this case the effect of subsequent engagements by the buyer was passed upon as to their tendency to show a receipt of the goods by him. The court said: "As mere words constituting a part of the original contract do not constitute an acceptance, so we are of opinion that mere words after words used, looking to the future, to acts afterwards done by the buyer towards carrying out the contract, do not constitute an acceptance or prove the actual receipt required by the statute." The case was stronger than that under discussion, as the goods were specific and fully set apart for the purchaser at the time of the subsequent conversations. No distinction is perceived between future acts to be done by the buyer and by the seller, as both equally derive their force from the buyer's assent.

I see no reason in the case at bar to hold that the defendants *received* the goods, independent of the matter of acceptance. There was no evidence that Percival became their agent for this purpose. The most that can be said is that they promised the plaintiffs that they would make Percival their agent. This promise being oral and connected with the sale, is not binding. They did not, in fact, communicate with

him, nor did he assume any dominion or control over the property. The promissory representations of the plaintiffs are clearly within the rule in *Shepherd* v. *Pressey* (*supra*).

The whole case falls within the doctrine in *Shindler* v. *Houston* (1 N. Y., 261), there being no sufficient act of the parties amounting to transfer of the possession of the lumber to the buyer and acceptance by him.

The judgment of the court below should be affirmed.

All concur.

Judgment affirmed.