## H. CORDENIO SMITH, PLAINTIFF, *v.* HIRAM K. EDWARDS, AS SHERIFF OF ONONDAGA COUNTY, DEFENDANT.

*Executory contract for the sale of personal property — when the title passes to the vendee.*

April 4, 1881, E. P. Allis & Co., and the plaintiff entered into an agreement whereby Allis & Co., "in consideration of the sum hereinafter stated, to be paid to them by the party of the second part, at the times and in the manner hereinafter stated," agreed to manufacture and furnish at Milwaukee, Wisconsin, free on board the cars, certain articles of machinery, and to furnish, if required, plans for its arrangement. The plaintiff was to pay cash on receipt of goods. Portions of the articles were shipped from Milwaukee and Jackson, consigned to the plaintiff at Marcellus, at which place they arrived.

Upon their arrival, they were attached by the defendant, as sheriff, as the property of Allis & Co.

In an action brought against him by the plaintiff, the vendee:

*Held,* that the title to the articles passed to the plaintiff when they were separated, and set apart for, and shipped and consigned to him, and that the sheriff had no right to seize them as the property of Allis & Co.

MOTION. by the defendant for a new trial upon exceptions ordered to be heard in the first instance at the General Term, after a verdict in favor of the plaintiff, directed at the Onondaga Circuit.

The defendant, as sheriff, held an attachment in favor of a creditor of Allis & Co., and to enforce the attachment seized certain property claimed to belong to Allis & Co., at Marcellus, Onondaga county.

The plaintiff claims to be owner of the property by virtue of an agreement for its purchase from Allis & Co. The following is a copy of the contract:

"This indenture, made this 4th day of April, 1881, by and between Edward P. Allis & Co., of Milwaukee, Wis., parties of the first part, and H. C. Smith, comprising the firm of H. C. Smith, of Marcellus, N. Y., party of the second part,

"*Witnesseth,* That the said party of the first part, in consideration of the sum hereinafter stated, to be paid to them by the party of the second part, at the times and in the manner hereinafter stated, agree to manufacture and furnish, at Milwaukee, Wis., f. o. b. cars, all to be good material and workmanship, the following articles, to wit:

"3 double set of Corrugated Rolls, in Gray's Pat. Noiseless Frames...................... .......... $1,800 00

"2 double set of Smooth Iron Rolls in Gray's Pat. Noiseless Frames...................... ........... 1,000 00

"4 No. 1 Smith Purifiers, C. $350, less 25 per cent.

"Doufour's Bolting Cloth, 20 per cent disc. price list.

"E. P. Allis & Co. guarantee H. C. Smith that the three double set of corrugated rolls will reduce the wheat and clear the bran for 100 to 125 barrels of flour in twenty-four hours for winter wheat.

"Also that Mr. Gray shall visit the mill.

"And they also agree to furnish plans of the arrangement of machinery and work at cost within thirty days from this date, if so desired.

" And the party of the second part hereby agrees to pay for said articles, as follows, to wit :

" Cash on receipt of goods.

" It is hereby agreed that said E. P. Allis & Co. are to use their best endeavors to have said articles ready for shipment at the time stated herein, and also that they shall be of a stated quality, but they are not to be held liable for any pecuniary damage in either case, except to make good any unmerchantable defect which may be proved to exist in said articles when furnished.

" In testimony whereof, the said parties have hereunto set their hands this 4th day of April, 1881.

(Signed)     " EDWARD P. ALLIS & CO.<br>" H. C. SMITH.

" Witness : W. D. GRAY.
     " L. V. RATHBUN."

*Waters, McLennan & Dillaye,* for the plaintiff.

*Rollin Tracy,* for the defendant.

HARDIN, J. :

Whether the property in question belonged to the plaintiff, the vendee, or Allis & Co., the vendors, is the principal question in this case. Plaintiff on the 4th day of April, 1881, entered into a written contract with Allis & Co., whereby he agreed to purchase and Allis & Co. agreed to sell him the property.

In the contract we find the following language, viz. :

" *Witness,* That the said party of the first part, in consideration of the sum hereafter stated *to be paid* to them by the party of the second part, at the time and in the manner hereafter stated, agree to manufacture and furnish, at Milwaukee, Wis., f. o. b. cars, all to be good material and workmanship, the following articles, to wit : "

Here follows a description of the property in suit as well as some other. The contract further stipulated that " Mr. Gray shall visit the mill at Marcellus, and the sellers were to furnish plans of arrangement of machinery and work at cost within thirty days from this date if so desired."

It also stipulated, viz. : " And the party of the second part hereby *agrees* to pay for said articles as follows, to wit, *cost* on receipt

of goods." It is hereby agreed that Allis & Co. are to use their best endeavors to have said articles ready for shipment at the *time* stated herein, and also that they shall be of a stated quality.
\* \* \*

The articles specified in the contract were not all manufactured at or shipped from Milwaukee, nor do they all constitute one machine. The frames and rolls make one machine, and the purifiers are a separate machine. Some were shipped the 20th of April from Jackson, Michigan. Some were shipped from Ansonia about the 20th of May, 1881. That shipped at Jackson and Milwaukee is in question. The purifiers reached Marcellus station the last day of April, 1881, and were attached by the sheriff. The former shipped from Milwaukee reached Marcellus the 9th day of May, 1881, and were attached by the sheriff in the freight-house of the railroad company.

As the contract was in writing and provided for the sale of the property, and that it should be furnished on board of the cars free, we are of the opinion that the title passed to the purchaser when the property was thus separated for, set apart to and shipped, consigned to the purchaser. (*Caulkins* v. *Hellman,* 47 N. Y., 452.) If the property had been lost by the carrier the consignor could not have maintained an action against the carrier for the loss thereof. (*Krulder* v. *Ellison,* 47 N. Y., 36.) The intent of the parties as to when the title should pass of course is to be gathered from the contract and the surrounding circumstances. (*Ogg* v. *Shuer,* 11 Eng. Rep. [Moak], 316; *Andrews* v. *Durant,* 11 N. Y., 40; *Clarkson* v. *Stevens,* 27 Alb. Law Jour., 114.) And when, as in this case, the facts are not in dispute the question of intent is one of law. (*Terry* v. *Wheeler,* 25 N. Y., 525; *Parker* v. *Baxter,* 86 id., 596.) There was not such a conflict in the evidence as to the surrounding circumstances, nor such an ambiguity in the language of the contract as to require the question of the intent of the parties as to the passing of title to be submitted to the jury. *Kein* v. *Tupper* (52 N. Y., 553) differs from this case. There the cotton was to be weighed by the vendors to ascertain the quantity, and to be sampled by both parties to ascertain the quality, and therefore no title passed until these acts were done.

The case of *Hammett* v. *Linneman* (48 N. Y., 399) also differs from the one before us. There was a sale for cash on delivery of

coal, and the pivotal question was, whether the delivery was such as to pass the title, and whether the acts and declarations of the parties indicated an intent to waive the condition, and that the evidence justified the finding that the condition had *not been* waived, and therefore no title passed.

*Rodgers* v. *Phillips* (40 N. Y., 519) involved the statute of frauds, and it was held that a delivery to a carrier did not answer the statute, as there was no acceptance of the goods.

Here the contract of sale is itself valid, as it is in writing. (*Halterline* v. *Rice*, 62 Barb., 593.) The cutter which was to be manufactured had not been completed and ready for delivery, and " appropriated to the benefit of or set apart for the purchaser with his assent and accepted by him, and therefore it was held that no title passed. It remained in the possession of the vendors unfinished when the vendors assigned and the title passed to their assignees, although plaintiff had contracted for a cutter to be made and delivered to him, which the vendors before they assigned had partially manufactured. The case was unlike the one now in hand.

At the close of the evidence there was a request to have the case submitted to the jury, to ascertain "whether the understanding of the parties was not that this property should be delivered and the title passed at Marcellus Falls instead of Milwaukee," or " the intent of the parties; that that would construe the contract as the jury should find upon that intent." This request was denied, and, we think, properly. No other request was made and no other position need be considered here.

The motion for a new trial must be denied, and judgment ordered for plaintiff on the verdict.

Motion for a new trial denied.

SMITH, P. J., and BARKER, J., concurred.

New trial denied and judgment ordered for the plaintiff on the verdict.