ISIDOR FUNT, Respondent, *v.* JACOB SCHIFFMAN et al., Appellants.

(Supreme Court, Appellate Term, First Department, February, 1920, Term — filed March, 1921.)

Sales — what insufficient to pass the property in the goods — actions—contracts—trial—evidence—damages—Personal Property Law, §§ 100, rule 4(1), 145(3).

Rule 4(1) of the rules declared by section 100 of the Personal Property Law for ascertaining the intention of the parties as to when the property in goods is to pass to the buyer, unless a different contention appears, provides that "where there is a contract to sell unascertained or future goods by description and goods of that description and in a deliverable state are unconditionally appropriated to the contract, either by the seller with the assent of the buyer, or by the buyer with the assent of the seller, the property in the goods there-

upon passes to the buyer. Such assent may be expressed or
implied, and may be given either before or after the appro-
priation is made." *Held,* that unless an appropriation to the
contract of goods, delivery of which was tendered by ·the seller
after manufacture, was made with the buyer's assent express
or implied, such appropriation is insufficient to pass the prop-
erty in the goods. (Pp. 159-160.)

A complaint set forth two causes of action, one for the pur-
chase price of goods sold and the other for damages for defend-
ants' breach of contract in cancelling and refusing to be bound
thereby. Upon the trial, by the court without a jury, it
appeared that after defendants had ordered from plaintiff cer-
tain coats of two designated style numbers designed and manu-
factured by plaintiff, a number of the coats of the first style
were delivered to defendants who though they accepted and
paid for the goods refused a subsequent tender of the remaining
coats of that style and without reason cancelled the order for
the goods of the other style after a few of the coats of said
style had been delivered, accepted and paid for. When the
order for the goods was cancelled they were all in the course
of manufacture. After they were completed, a few days after
the order of cancellation, they were sold in the open market
and the evidence tended to show that at the time of the sale,
the market price had dropped twenty-five to .forty per cent
since the contract was made. The plaintiff was given judg-
ment for the full contract price of the goods tendered and for
the difference between the contract price and that for which the
goods were sold in the open market, fixed by the court as the
market price of the goods of the style numbers which the
defendants had cancelled. Upon reversing the judgment and
ordering a new trial; *held,* that the plaintiff's sole right of
action, on the record as it stood, under the first cause of action
alleged, was one for damages for non-acceptance of the goods
and that the measure of damages was controlled by section
145(3) of the Personal Property Law. (P. 160.)

The trial judge as to the second cause of action, which was··
based on an anticipatory breach of contract, correctly applied
the rule of damages which he should have applied upon defend-
ants' refusal to accept and pay for the goods described in the
contract constituting the subject matter of the first cause of
action. (P. 161.)

APPEAL by defendants from a judgment of the Municipal Court of the city of New York, borough of Brooklyn, ninth district, in favor of the plaintiff, after a trial by the court without a jury.

Abraham Solomon, for appellants.

Max Friedman, for respondent.

LEHMAN, J.   The plaintiff seeks in his first cause of action to recover the purchase price of certain goods which the defendants ordered from him and which were tendered by him to the defendants, and in his second cause of action seeks to recover damages for the defendants' breach of contract " in cancelling and refusing to be bound by contract " for the sale and delivery of other goods.   It appeared at the trial that the defendants ordered from the plaintiff twenty-five coats designated as style No. 937 at the price of thirty-four dollars and fifty cents per coat, and twenty-two coats designated as style No. 934 at the price of thirty-two dollars and fifty cents per coat.   The style numbers are apparently the numbers of styles designed and manufactured by the plaintiff.   Thereafter the plaintiff made and delivered to the defendants eleven coats of style No. 937 and the defendants accepted and paid for these coats, but they refused a subsequent tender of the remaining fourteen coats of this style number.   They also cancelled without reason the order for goods of style No. 934 after seven coats of this style number were delivered, accepted and paid for. At the time when the order for these coats was cancelled, they were all in course of manufacture.   The plaintiff completed them a few days thereafter, but the cost of completion does not appear.   After the goods were completed the plaintiff sold them in the open market for twenty-five dollars a coat, and there

is other evidence to show that at that time the market
price had dropped twenty-five to forty per cent since
the making of the contract. Upon this testimony the
trial justice gave judgment for the plaintiff for the
full contract price of the goods which he had tendered
to the defendants and for the difference between the
contract price and twenty-five dollars, which he fixed
as the market price of the goods of the style numbers
which the defendants had cancelled. Upon this appeal
the only point that requires serious consideration is
whether the learned trial justice applied the proper
measure of damages. Previous to the enactment of
article 5 of the Personal Property Law, popularly
known as the Sales Act, there can be no doubt but
that the plaintiff could have brought an action to
recover the contract price of the goods which he manu-
factured in accordance with his order and tendered to
the defendants. '' When the vendee of personal prop-
erty under an executory contract of sale, refuses to
complete his purchase, the vendor may keep the article
for· him and sue for the entire purchase price; or he
may keep the property as his own and sue for the
difference between the market value and the contract
price; or he may sell the property for the highest sum
he can get and after crediting the net amount received,
sue for the balance of the purchase money.'' *Acker-
man* v. *Rubens,* 167 N. Y. 408.

The right of the vendor under an executory contract
of sale to tender the goods to a vendee and to sue for
the entire purchase price upon the refusal of the
vendee to accept and pay for them, and thus in effect
compel a specific performance of the contract, has never
been recognized in many jurisdictions, and even in this
state is now limited under the provisions of section
144 of the Personal Property Law. The drafters of
the Sales Act undoubtedly intended to codify the gen-

eral rules applicable to contracts of sale and so far as possible, to make them uniform in the various jurisdictions.    Section 144 contains the provisions which are applicable to an action for the price of goods, and it would seem that under that section an action for the price can be maintained only in three cases. *First,* where under a contract to sell or a sale, the property in the goods has passed to the buyer; *second,* where the price is payable on a day certain irrespective of delivery or of transfer of title; *third,* where the goods cannot readily be resold for a reasonable price and the provisions of section 145, which regulates actions for damages for non-acceptance of the goods, are not applicable.

In the present case the contract contains no term making the price payable on a day certain irrespective of delivery or of transfer of title, nor does it appear that the goods cannot be resold for a reasonable price, or that the provisions of section 145 are not applicable.    There can, therefore, be no action for the price under the Sales Act unless the property in the goods has previously passed.    Section 100 of the Personal Property Law provides the rules for ascertaining the intention of the parties as to the time the property in the goods is to pass to the buyer, unless a different intention appears.    Rule 4, subdivision 1, seems the only rule which is applicable to the present case.    That rule provides that " where there is a contract to sell unascertained or future goods by description and goods of that description and in a deliverable state are unconditionally appropriated to the contract, either by the seller with the assent of the buyer, or by the buyer with the assent of the seller, the property in the goods thereupon passes to the buyer.    Such assent may be expressed or implied, and may be given either before or after the appropriation is made."

Appellate Term, First Department, March, 1921.    [Vol. 115.

The seller by tendering delivery of the goods after they were manufactured undoubtedly appropriated the goods tendered to the contract, but unless that appropriation was made with the buyer's assent, express or implied, it was ineffective to pass property in the goods.

It may be that if the contract could be regarded as a contract to manufacture specially for the defendants, such assent to an appropriation after the goods have been manufactured in accordance with the contract might be implied, but in the present case it would seem that the contract is the ordinary contract for the sale of unascertained or future goods by description. The description is apparently the style number designed and ordinarily manufactured by the plaintiff, and it is not shown that they are not suitable for sale to others in the ordinary course of the seller's business. No materials were furnished by the defendants to be incorporated in the goods when made and the plaintiff could comply with his contract by tendering goods which he might have manufactured for the general purposes of his business. Under these circumstances I cannot find that any assent on the part of the defendants to the appropriation of the goods can be implied. It would seem to follow, therefore, that the plaintiff's sole right of action, upon the record, as it stands, of the first cause of action, is one for damages for non-acceptance of the goods, and the measure of damages in such action is controlled by subdivision 3 of section 145 of the Personal Property Law. In this regard I have not overlooked the statement of the Appellate Division of this department in the case of *Gourd* v. *Healy,* 176 App. Div. 464, that this statute " is merely declaratory of the common law as it theretofore existed." That statement is entirely accurate in regard to the question then under consideration by the

Appellate Division, but the Appellate Division clearly did not intend to hold that the Personal Property Law has made no change in the common law rules as previously applied by the courts of this state. It follows that the wrong rule of damages has been applied in regard to the plaintiff's first cause of action.

It is also urged that the trial justice applied an erroneous rule of damages in regard to the second cause of action. The plaintiff's evidence shows that the defendants cancelled the order for goods of style No. 934 while some of the goods were not only still undelivered but were in course of manufacture. After this cancellation the plaintiff finished the garments and sold them for twenty-five dollars apiece, and there is evidence to show that this price was the market value of the garments, and the trial justice thereupon gave judgment for the difference between the contract price and twenty-five dollars per garment, which he held constituted the market price. He thus applied in the second cause of action the measure of damages which we have held he should have applied upon the refusal of the defendants to accept and pay for the goods described in the contract, which constituted the subject matter of the first cause of action. While it is evident that the two contracts are essentially similar, the defendants claim that a different measure of damages must be applied where the vendee cancels his contract while the goods are still in course of manufacture, from the measure which is applied where the breach occurs thereafter.

The Sales Act (Pers. Prop. Law, § 145) provides that in case the buyer repudiates " while labor or expense of material amount are necessary on the part of the seller to enable him to fulfill his obligations * * * the buyer shall be liable to the seller for no greater damages than the seller would have suffered

11

if he did nothing toward carrying out the contract or the sale after receiving notice of the buyer's repudiation or countermand," and the defendants urge that since there is no evidence to show the expense of completing the garments after the defendants' cancellation of the order, he cannot under the provisions of this section recover the damages which are based upon the loss which the plaintiff suffered by the defendants' failure to accept and pay for the finished garments. This contention of the defendants seems to me to rest upon a fundamental misconception of the meaning and intent of the statute and of the nature of the plaintiff's cause of action now under consideration.

This section of the statute, in my opinion, merely places a limitation upon the rule which has been laid down in its broadest form in *Forst* v. *Knight,* L. R. 7 Exch. 111, that in case of notice to a promisee of a promisor's intention not to perform his contract, " the promisee, if he pleases, may treat the notice of his intention as inoperative and await the time when the contract is to be executed and then hold the other party responsible for all the consequences of non-performance; but in that case he keeps the contract alive for the benefit of the other party as well as his own; he remains subject to all his own obligations and liabilities under it." This rule was reiterated and applied in this state in the case of *Rubber Trading Co.* v. *Manhattan Rubber Manufacturing Co.,* 221 N. Y. 120, citing *Forst* v. *Knight, supra,* and other cases, but it has no application to the present case, for here the plaintiff did not treat the notice of cancellation by the buyer as inoperative but bases his right of action upon such notice as an anticipatory breach. It is true that he thereafter completed the garments, but the buyer did not thereby become liable to the seller for any greater damages " than the seller would have

suffered if he did nothing towards carrying out the contract or the sale after receiving notice of the buyer's repudiation or countermand.'' This section of the statute can apply only where the seller in spite of the notice of countermand fulfills his obligations under the contract and thereby is enabled to obtain greater damages than if he had ceased work under the contract upon the receipt of such notice. Such a case would arise where under the contract the seller could upon the complete performance of his own obligation compel the buyer to pay the full contract price, though the payment of the loss suffered by the seller if he had ceased performance at the time of the notice of countermand would have caused the buyer lesser damage. In the present case, however, the plaintiff would not be entitled to the full contract price, even if he had fully performed, and had tendered the goods to the defendants, as we have shown above, in considering the rule of damages to be applied in the case of an exactly similar contract in the first cause of action; and in any event the plaintiff here does not and cannot claim damages as upon a full performance, for though he completed the goods he did not tender them to the defendants. The defendants have not been compelled to pay the contract price but merely the difference between the contract and the market price, and in this view of the case it is quite irrelevant whether the seller after notice of countermand by the defendants completed the garments, which at all times remained his property and then sold the finished goods or whether he sold or otherwise disposed of the goods when partially completed.

The serious question on this branch of the case is not whether subdivision 4 of section 145 of the Personal Property Law applies, but whether the trial justice correctly applied to an action based on an

anticipatory breach of contract the same rule of damages that he should have applied upon a refusal to accept at the time agreed upon for delivery, for that section would be entirely meaningless unless the legislature had recognized that a different rule of damages might at least in some cases be applicable in the case of anticipatory breach from that which is applicable to a breach at the time set for performance. There can be no doubt that prior to the enactment of the Sales Act, the rule in regard to contracts of sale of goods to be manufactured was as stated in the case of *Belle of Bourbon Co.* v. *Leffler*, 87 App. Div. 302: "Where the purchaser of goods to be manufactured repudiates the contract in advance of the manufacture of the goods or is guilty of a breach of contract which justified the vendor in suspending the further manufacture of the goods, and he does so, then the measure of damages is the difference between the cost of manufacture and the contract price." See to the same effect *Oswego Falls Pulp & Paper Co.* v. *Stecher Lithographic Co.*, 215 N. Y. 98. This rule is sound and logical if the contract which has been repudiated is in law a contract to manufacture and not a contract of sale or one in which property in the goods to be manutured was from the inception of the manufacture in the buyer, or one where upon completion the buyer could be held liable for the price, but it would seem that it cannot logically be applied to an ordinary action for the sale of future goods where the property in the goods would not pass till delivery and where the buyer could not be held liable for the price if he failed to take delivery. In the latter case, as stated by Professor Williston in his work on Sales, section 587: "The character of the breach cannot change the nature of the contract, and the damages must, therefore, be what the injured party suffered or is likely to suffer

because of the failure of the defendant at the time he agreed to do so. * * * In any event though the plaintiff may bring his action at once, his damages must be based on the cost or value of the performance at the time fixed by the contract for that performance, not at the time of the breach.'' Under the common law rules as interpreted by the courts of this state it was '' held here by a long course of decisions that an agreement for the sale of any commodity at the time but which the vendor is to manufacture or to put in a position to be delivered, such as flour from wheat not yet ground, or nails to be made from iron belonging to a manufacturer, is not a contract of sale. The New York rule lays stress on the word sale. There must be a sale at the time the contract is made.'' *Cooke* v. *Millard,* 65 N. Y. 352. Professor Williston in his work on Sales, section 563, points out that the so-called common-law New York rule as to the nature of the contracts leads logically also to the rule of damages applied in this state upon the breach of such contract, but the common-law New York rule as to the nature of the contract has been changed by section 85 of the Personal Property Law, so that the contract under consideration is now regarded as a contract of sale and not of manufacture, and the New York rule in regard to the nature of the seller's right of action is changed by sections 144 and 145 of the same statute. Since the contract was a contract of sale, and the evidence shows there was an available market for the goods in question and no special circumstances showing proximate damages of a greater amount such as might arise where the goods were to be manufactured specially for the buyer and were not readily salable in his own business, the measure of damages is the difference between the market price and the contract price of the goods.

It follows that in the second cause of action the trial justice has applied the proper measure of damages. Judgment should be reversed and a new trial ordered, with thirty dollars costs to appellant to abide the event.

FINCH, J., concurring in the result.

Judgment reversed and new trial ordered, with thirty dollars costs to appellant to abide event.