THEODORE ECONOMU, Appellant, v. FRANK SCHWARTZ and BENJAMIN SCHWARTZ, Trading under the Name and Style of SCHWARTZ BROS., Respondents.

First Department, December 2, 1921.

Sales — common-law rule as to right of seller to recover purchase price where buyer refuses to accept goods changed by Sales of Goods Act — when seller may maintain action for purchase price on refusal of buyer to accept goods — action to recover amount deposited as security for performance of contract for manufacture and sale of platinum settings — rejection of settings by plaintiff when tendered — purchase price cannot be recovered in counterclaim without allegation and proof that settings could not readily be resold and that defendants had notified plaintiff that they held settings as bailee — title had not passed to plaintiff prior to time when defendants tendered delivery — settings were not appropriated to contract so as to pass title to plaintiff — right of defendants to maintain action for damages.

The common-law rule that where the seller of personal property under an executory contract of manufacture and sale makes due tender of performance but the buyer refuses to take the goods, the seller may retain them and treat the same as belonging to the buyer and recover the contract price from him, has been changed by the provisions of article 5 of the Personal Property Law known as the Sales of Goods Act. Now, the seller may only maintain an action for the purchase price of the goods sold, where it appears that the goods cannot readily be resold for a reasonable price and where, upon refusal of the buyer to receive the goods, the seller notifies the buyer that he thereafter will hold the goods as bailee for the buyer.

Hence, in an action to recover money alleged to have been deposited by the plaintiff with the defendants as security for the performance by the plaintiff of a contract for the purchase and sale of two platinum ring settings, which the defendants agreed to manufacture and deliver to the plaintiff from stock patterns, the defendants are not entitled to recover the purchase price under a counterclaim admitting the making of the contract and the receipt of the deposit and alleging that the defendants manufactured and offered to the plaintiff the two platinum ring settings which were in accordance with the samples exhibited, and that the plaintiff refused to accept the same, where it is not alleged in the counterclaim nor proven on the trial that the settings in question could not readily be resold for a reasonable price, nor that any notice had been served upon the plaintiff as required by subdivision 3 of section 144 of the

Personal Property Law that the defendants held the goods as bailee for the plaintiff.

The title to the settings had not passed to the plaintiff prior to the time when the defendants tendered delivery.

The contract does not fall within subdivision 2 of section 144 of the Personal Property Law for the reason that the price was not payable " on a day certain, irrespective of delivery or of transfer of title."

The settings were not appropriated to the contract, within the meaning of subdivision 1 of rule 4 of section 100 of the Personal Property Law, so as to pass the title to the plaintiff, since the plaintiff immediately refused to accept the settings on the ground that they were not in accordance with the order and were not similar to the sample. The mere selection or setting aside of goods so manufactured by the seller is not sufficient.

*It seems,* that the defendants have a right of action against the plaintiff to recover such damages as they may have sustained by reason of the refusal of the plaintiff to accept the settings, if they were, in fact, such as the plaintiff ordered.

APPEAL by the plaintiff, Theodore Economu, from an order and determination of the Appellate Term of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 29th day of June, 1921, affirming a judgment of the Municipal Court of the City of New York, Borough of Manhattan, First District, dismissing the plaintiff's complaint on the merits.

*Meyer Kraushaar* of counsel [*Emanuel Celler* with him on the brief], for the appellant.

*L. E. Warren,* for the respondents.

MERRELL, J.:

The action is brought to recover $100 alleged to have been deposited by the plaintiff with the defendants, on or about October 25, 1920, as security for the performance on the part of the plaintiff of a contract for the purchase and sale of two platinum ring settings. It is alleged that the defendants on said date agreed to manufacture and deliver to the plaintiff, within a reasonable time, said ring settings in accordance with samples exhibited to the plaintiff, and for which, upon delivery, the plaintiff was to pay defendants the sum of $400. In the complaint it is alleged: " That within a reasonable time thereafter the defendants thereupon offered

to the plaintiff, but neglected to deliver, two platinum ring settings in accordance with the contract, in accordance with the sample submitted, and in accordance with the description and patterns agreed upon;" that the plaintiff duly performed all the conditions of the contract on his part and rescinded the sale and demanded the return of the $100 which he had so deposited.

Defendants in their answer admit the making of the aforesaid contract, and set up by way of counterclaim that the defendants manufactured and offered to the plaintiff the two platinum ring settings, which were in accordance with the samples exhibited to plaintiff and in accordance with the description and patterns shown the plaintiff at the time of the sale, and that the plaintiff refused to accept the same or to pay therefor. The defendants demand judgment upon their counterclaim in the sum of $300, giving credit to the plaintiff for the amount of such deposit.

The trial court found in favor of the defendants, and judgment of the trial court has been affirmed in the Appellate Term.

No evidence was given upon the trial respecting the market value of the two platinum settings. It was not alleged in the counterclaim, nor proven upon the trial, that the settings in question could not have been resold for a reasonable price, nor is there any evidence to show that the defendants notified the plaintiff that the goods were held by the defendants as bailees for the plaintiff. It was admitted by the defendants in their answer that the $100 paid as aforesaid was as security for the carrying out of the contract on the part of the plaintiff. Such payment, therefore, was not made on account of the purchase price, either before or after the settings were manufactured. The defendants' recovery is for the purchase price of the settings.

It is the contention of the appellant that an action for the purchase price under the facts disclosed does not lie.

The plaintiff testified that about the 25th of October, 1920, he went to the defendants' place of business, accompanied by his wife, and that they were there shown certain platinum settings; that the settings were satisfactory to the plaintiff and that he ordered two. One was for a small diamond and

the other for a large one. The smaller setting was to have ten or twelve small diamonds, and the larger setting thirty-six. When the settings were completed the plaintiff rejected the larger setting as not in accordance with the sample, and for that reason refused to accept the delivery of the settings or to pay for the same.

The evidence offered by the defendants is to the effect that the order was given substantially as claimed by the plaintiff, and that the two settings were ordered by the defendants, in accordance with the plaintiff's order, from one Morris Wilinsky, a manufacturer, by a stock number, the small setting being known as No. 217, and the large setting as No. 256. Wilinsky's place of business was in New York city, and he was the manufacturer from whom the defendants were accustomed to order settings similar to the ones selected by the plaintiff. Wilinsky manufactured the settings and brought them to the defendants' place of business, where they were shown and tendered to the plaintiff.

Benjamin Schwartz, one of the defendants, testified that the aforesaid numbers by which the settings were ordered were stock numbers, and that such numbers could be purchased by anybody in the " stock market," and that anybody who wanted " Wilinsky's No. 256 can buy it in any jewelry store."

Wilinsky testified that he received the order from the defendants, and that he did not customarily keep in stock mountings for three and one-half carats; that the largest mounting ordinarily kept in stock was for a carat and a half; that the larger mountings were made to order; that the stock number of the large setting which was manufactured by him for the defendants was " 256; " that it was customary to furnish him with the stock number together with the number of carats of the stone to be set, and that he would then make the setting in accordance with the stock number.

The defendants offered proof to the effect that the settings tendered to the plaintiff were in exact accordance with the plaintiff's order and exactly like the samples shown the plaintiff.

The trial court and the Appellate Term have found the facts in favor of the defendants, and the only question to

be determined is as to whether or not under the circumstances the defendants were entitled to recover for the purchase price of the settings without alleging and proving that the settings could not readily be resold for a reasonable price, and that the defendants had notified the plaintiff that the goods were held by the defendants as bailees for him. No proof was given respecting the market value of the settings.

The respondents rely upon the case of *Scott* v. *Miller* (114 App. Div. 6), and claim that the contract in question was for work, labor and services not within the Statute of Frauds, and for which the defendants were entitled to be compensated at the contract price upon tender of the settings to the plaintiff. The decision in the *Scott* case was made in 1906. The action was brought to recover the reasonable value of a portrait painted by the plaintiff for the defendant, Gertrude B. Miller. The portrait was that of the defendant's deceased husband. The defendant had agreed to pay the plaintiff the reasonable value of her services, and had actually paid $1,000 therefor. A dispute arose concerning the value of plaintiff's services, and the action was brought to recover the full value thereof. The court held that the plaintiff had made a sufficient tender of the portrait to the defendant and was entitled to recover the reasonable value of her services. *Scott* v. *Miller* and other kindred cases, even if they are held to be in point, are not controlling, since the enactment of the Sales of Goods Act, which now forms article 5 of the Personal Property Law (as added by Laws of 1911, chap. 571). Since the passage of such act, which took effect on September 1, 1911, an action for the purchase price can be brought only in the cases therein specified. Section 144 (Subds. 1, 2, 3) provides as follows:

" § 144. Action for the price. 1. Where, under a contract to sell or a sale, the property in the goods has passed to the buyer, and the buyer wrongfully neglects or refuses to pay for the goods according to the terms of the contract or the sale, the seller may maintain an action against him for the price of the goods.

" 2. Where, under a contract to sell or a sale, the price is payable on a day certain, irrespective of delivery or of transfer of title, and the buyer wrongfully neglects or refuses to pay such price, the seller may maintain an action for the price,

although the property in the goods has not passed, and the goods have not been appropriated to the contract. But it shall be a defense to such an action that the seller at any time before judgment in such action has manifested an inability to perform the contract or the sale on his part or an intention not to perform it.

" 3. Although the property in the goods has not passed, if they cannot readily be resold for a reasonable price, and if the provisions of section one hundred and forty-five are not applicable, the seller may offer to deliver the goods to the buyer, and if the buyer refuses to receive them, may notify the buyer that the goods are thereafter held by the seller as bailee for the buyer. Thereafter the seller may treat the goods as the buyer's and may maintain an action for the price."

Section 145 provides as follows:

" § 145. Action for damages for nonacceptance of the goods. 1. Where the buyer wrongfully neglects or refuses to accept and pay for the goods, the seller may maintain an action against him for damages for nonacceptance.

" 2. The measure of damages is the estimated loss directly and naturally resulting, in the ordinary course of events, from the buyer's breach of contract.

" 3. Where there is an available market for the goods in question, the measure of damages is, in the absence of special circumstances, showing proximate damage of a greater amount, the difference between the contract price and the market or current price at the time or times when the goods ought to have been accepted, or, if no time was fixed for acceptance, then at the time of the refusal to accept.

" 4.    *    *    *."

Prior to the aforesaid enactment, the New York rule, as laid down by a long line of decisions, was that where the seller of personal property makes due tender of performance, but the buyer refuses to take the goods, the seller may retain the goods and treat the same as belonging to the buyer, and recover the contract price from him. This rule prevailed at common law in this State regardless of whether or not the goods were readily resalable. (Bogert " The Sale of Goods in New York," 245; *Bement* v. *Smith,* 15 Wend. 493; *Dustan*

v. *McAndrew*, 44 N. Y. 72; *Hayden* v. *Demets*, 53 id. 426; *Mason* v. *Decker*, 72 id. 595; *Quick* v. *Wheeler*, 78 id. 300; *Hunter* v. *Wetsell*, 84 id. 549; *Atkinson* v. *Truesdell*, 127 id. 230; *Van Brocklen* v. *Smeallie*, 140 id. 70; *Ackerman* v. *Rubens*, 167 id. 405; *Gross* v. *Ajello*, 132 App. Div. 25.)    In his note under section 144 (at p. 246) Bogert says, respecting the rule laid down in the above cases: " The New York rule upon this subject has been greatly modified by the Sales Act. Now only in cases where the goods ' cannot readily be resold for a reasonable price ' may the seller force the title on the buyer and recover the price of him.    Formerly he could recover the price in all cases after due tender."

In the case at bar, the courts below have held that due tender of the two settings was made by defendants to plaintiff. Undoubtedly, under the old rule, the defendants could, under such circumstances, have brought an action against the plaintiff for the full amount of the purchase price.    Such an action would have been founded upon the election of the defendants that the legal title passed to the vendee, the vendors holding the goods after tender as security for the purchase price.    In the present case, under the existing statutes, such action will not lie.

The defendants, as above stated, neither alleged nor proved that the settings could not readily be resold for a reasonable price, nor that any notice had been served upon the plaintiff, as required by section 144, subdivision 3, of the Personal Property Law, known as the Sales of Goods Act, that the defendants held the goods as bailees for the plaintiff.    The uncontroverted evidence, on the other hand, seems very clearly to show that the settings were of a recognized kind and were ordered by a stock number, and, as stated by one of the defendants, were of a character that they could be purchased by any jeweler who wished such settings.    The evidence, therefore, seems to negative any claim which might be made by the defendants that the settings could not be resold for a reasonable price.    One cannot read sections 144 and 145 of the Personal Property Law, known as the Sales of Goods Act, without being convinced that a change in the common-law rule above set forth was made in the respects above noted.    The defendants, under the facts shown, cannot succeed in an action for

the purchase price, and must bring themselves within subdivision 3 of section 144, if they seek to recover damages for plaintiff's breach of the contract. It is plain that the property in the settings had not passed to the plaintiff prior to the time when the defendants endeavored to force the plaintiff to accept the settings which he claimed were not in accordance with the order. The contract clearly does not fall within subdivision 2 of the aforesaid section, for the reason that the price was not payable " on a day certain, irrespective of delivery or of transfer of title." The plaintiff had the clear right to a tender of the goods which he bought, and if the defendants cannot bring themselves within section 144 of the Personal Property Law, they were and are not entitled to recover the purchase price. (*American Aniline Products, Inc.,* v. *Nagase & Co., Ltd.,* 187 App. Div. 555; *Robison & Co., Inc.,* v. *Kram, No. 1,* 195 id. 873.)

In the case last cited this court considered a complaint in an action brought to recover the purchase price of goods. The complaint alleged, among other things, that the defendant had wrongfully and in violation of the contract, failed and refused to accept and pay for the goods in question, and that the plaintiff held the balance of the goods for the account and subject to the order of the defendant. Mr. Justice LAUGHLIN, in his opinion, says: " The complaint would have been good at common law; but in view of the changes in the common law made by article 5 of the Personal Property Law * * *, I think it is not good for the reason that the facts do not show such an identification and appropriation of the property to the contract as passed title thereto to the defendant. By virtue of the provisions of subdivision 1 of section 144 of the Personal Property Law, if title to the goods has passed to the buyer, the seller may maintain an action for the recovery of the purchase price. It is not alleged that the contract price was payable on a day certain, irrespective of delivery or transfer of title and, therefore, the action is not authorized under subdivision 2 of section 144. Subdivision 3 of that section confers limited authority in cases where title has not passed to the buyer to bring an action for the purchase price as distinguished from one for damages; but such an action is only authorized thereby if the goods cannot be readily resold for a reasonable price,

and if none of the provisions of section 145 are applicable and when, in such case, the buyer refuses to receive the goods on tender of delivery by the seller, and in those events the seller may notify the buyer that he holds the goods as his bailee and may then treat the goods as the property of the buyer and sue for the purchase price.  *  *  *  Two facts essential to authorize an action for the purchase price under said subdivision 3 of section 144 are not shown.  They are that the goods cannot readily be resold for a reasonable price and that the seller has notified the buyer that he holds the goods as bailee for him."

In the case at bar the defendants do not claim that they are entitled to succeed on the ground that the title to the settings had in any way passed to the plaintiff prior to the alleged tender.  The defendants rely solely upon the rule laid down, as aforesaid, in *Scott* v. *Miller* (*supra*).

In section 100 of the Personal Property Law (as added by Laws of 1911, chap. 571) certain rules are laid down for ascertaining the intention of the parties.  Among such rules are the following:

" Rule 1.  Where there is an unconditional contract to sell specific goods, in a deliverable state, the property in the goods passes to the buyer when the contract is made and it is immaterial whether the time of payment, or the time of delivery, or both, be postponed."

" Rule 2.  Where there is a contract to sell specific goods and the seller is bound to do something to the goods, for the purpose of putting them into a deliverable state, the property does not pass until such thing be done."

" Rule 4.  1. Where there is a contract to sell unascertained or future goods by description, and goods of that description and in a deliverable state are unconditionally appropriated to the contract, either by the seller with the assent of the buyer, or by the buyer with the assent of the seller, the property in the goods thereupon passes to the buyer.  Such assent may be expressed or implied, and may be given either before or after the appropriation is made."

The evidence in the case at bar clearly discloses that the settings ordered by the plaintiff were to be in accordance with a sample and were not at the time of the order in a

deliverable state. When the settings were manufactured and shown to the plaintiff he immediately refused to accept them on the ground that they were not in accordance with the order and were not similar to the sample shown him. The plaintiff, therefore, never consented or assented in any way to the appropriation to the contract of the settings in question. It is now well settled, if goods are to be manufactured according to a design, pattern or sample, that the purchaser has the right to examine the goods and to ascertain whether they comply with the contract. The mere selection or setting aside of goods so manufactured by the vendor is not sufficient. (*Cooke* v. *Millard,* 65 N. Y. 352; *Boiko & Co., Inc.,* v. *Atlantic Woolen Mills, Inc.,* 195 App. Div. 207; *Funt* v. *Schiffman,* 115 Misc. Rep. 155.) Under no theory of the case can it be said that the settings were appropriated to the contract so as to pass the title to the plaintiff.

The common-law rule that where a vendee of personal property under an executory contract of sale refuses to complete his purchase, by acceptance of the property and payment of the purchase price, he became liable for the purchase price at the suit of the vendor, has been changed by the Sales of Goods Act. Now the vendor may only maintain an action for the purchase price of the goods sold where it appears that the goods cannot readily be resold for a reasonable price, and where, upon refusal of the buyer to receive the goods, the seller notifies the buyer that he thereafter will hold the goods as bailee for the buyer. The defendants have failed to bring themselves within the existing statutory rules, and were not entitled to recover under their counterclaim for the unpaid purchase price of the settings alleged to have been sold to the plaintiff. The defendants undoubtedly have a right of action against the plaintiff to recover such damages as they may have sustained by reason of the refusal of the plaintiff to accept the settings, if they are, in fact, such as the plaintiff ordered. Such an action, however, upon the evidence presented upon the trial below, cannot be for the purchase price, and it will be necessary for the defendants to prove such damages as they have sustained, and if in excess of the plaintiff's deposit, they will be entitled to a recovery therefor.

The determination appealed from and the judgment of the Municipal Court should be reversed and a new trial granted, with costs in all courts to the appellant to abide event.

CLARKE, P. J., DOWLING, PAGE and GREENBAUM, JJ., concur.

Determination and judgment reversed and new trial ordered, with costs in all courts to appellant to abide event.