JOSEPH K. LARKIN and Others, Copartners, Doing Business under the Firm Name and Style of J. K. LARKIN & Co., Respondents, v. THEODORE GEISENHEIMER and ALFRED F. LICHTENSTEIN, Copartners, Doing Business under the Firm Name and Style of GEISENHEIMER & Co., Appellants.

Second Department, June 29, 1922.

Sales — action for purchase price under Personal Property Law, §§ 144, 145 — contract provided that goods were to be according to sample, buyers reserving right to reject if otherwise — goods were manufactured and delivered and buyers rejected within reasonable time claiming goods were not according to sample — jury found goods were according to sample — under Personal Property Law, § 100, rule 2, title did not pass and seller could not recover for purchase price — under statute, action under such circumstances must be for damages for non-acceptance whether rejection rightful or wrongful.

An action for the purchase price of goods cannot be maintained under sections 144 and 145 of the Personal Property Law, where it appears that the goods were to be manufactured and delivered to the buyers for inspection, they reserving the right to reject if the goods were not according to sample, and that the goods were delivered and were rejected by the buyers, within a reasonable time, on the ground that they were not according to sample, although the jury found that the goods were according to sample, for, under rule 2 of section 100 of the Personal Property Law, title did not pass to the buyers.

Under said statute, where goods are manufactured and delivered for inspection, the buyer reserving the right to reject, and the buyer does reject, whether rightfully or wrongfully, the action must be for damages for non-acceptance.

APPEAL by the defendants, Theodore Geisenheimer and another, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of Kings on the 8th day of June, 1921, upon the verdict of a jury, and also from an order entered in said clerk's office on the 6th day of June,

1921, denying defendants' motion for a new trial made upon the minutes.

*William D. Gaillard* [*Frederick S. Fisher* with him on the brief], for the appellants.

*James S. Darcy* [*Charles H. Bailey* with him on the brief], for the respondents.

KELLY, J.:

The complaint alleges a cause of action for goods sold and delivered, to wit, that on October 24, 1917, at the city of New York, the plaintiffs sold to defendants and defendants purchased of plaintiffs 9,000 pounds of tacks at forty-two cents per pound, amounting in all to $3,780; that it was agreed that the tacks were to be manufactured and delivered to defendants; that on December 29, 1917, plaintiffs duly delivered the merchandise and that they have not been paid therefor.

The answer denies the contract alleged in the complaint and denies performance and delivery by plaintiffs, and as a separate defense alleges a sale by sample; that when the goods were sent to defendants' place of business they were inspected; that they were not in accordance with the samples but were inferior, imperfect and unmerchantable; that because of this defendants refused to receive them and hold the same at the disposal of plaintiffs.

On the trial the plaintiffs proved the contract by written correspondence between plaintiffs and defendants. Defendants wrote the plaintiffs on October 15, 1917, that they, defendants, had an order from Brazil for " nails " as per five samples inclosed, asking if defendants were manufacturing the " nails " and if they could offer them to defendants under favorable conditions. The letter continues: " If so please make us an offer for large quantities, and state your lowest possible price f. a. s. New York; strong packing for export included " (f. a. s. means in the trade " free alongside ship "). On October 16, 1921, plaintiffs thank defendants for their letter inclosing the samples of shoe tacks and quote price " in lots of 1,000 lbs. or more, 42c per lb. net, F A S Vessel, net cash against ship's receipt, for shipment about four weeks after receipt of order." On October 24, 1917, defendants write acknowledging receipt of the previous letter, and they order 9,000 pounds of shoe tacks for export to Para, Brazil, at forty-two cents per pound F. A. S. vessel, New York; packing to be strong in order to avoid damage. They direct that the goods are to be marked " J. H. G. 1 /up, Para, Brazil," and the letter continues as follows: " goods, according to agreement made, to be sent to our offices where they will be inspected, and if found according to samples,

accepted, otherwise, as explained to you, we would be sorry to have to reject them." There is no evidence in the record as to what is meant by the words " as explained to you." But there is no dispute that plaintiffs were to manufacture the tacks according to sample.

Plaintiffs contend that they did manufacture according to sample. The learned trial justice submitted the question whether the goods were manufactured according to sample to the jury, and the verdict in favor of the plaintiffs on that issue is supported by the evidence.

The plaintiffs sent defendants' letter and the sample of tacks to one of the leading manufacturers in the country at Cleveland, O., with directions to manufacture, mark the packages and forward them to New York.

On December 5, 1917, defendants wrote plaintiffs that they had received a telegram from " our friends in Brazil " as follows: " Cancel Shoe Tack Order," and defendants say that the order has been canceled probably for the reason that plaintiffs could not deliver the goods in accordance with the offer. But defendants say they are going to take the matter up " with our friends," and that on receipt of further information they will communicate with plaintiffs.

But on the same day, December 5, 1917, the plaintiffs had written defendants that the material had been manufactured and was *en route* from Cleveland and that upon receipt of arrival notice from the railroad plaintiffs would immediately forward invoice to defendants.

Apparently the letters crossed. But there is nothing in the claim of failure to deliver in time; if there was it was expressly waived by the defendants.

Plaintiffs declined to cancel the order because of the telegram from Brazil, and on December 14, 1917, defendants wrote: " Please let us know when we may expect the goods in our offices so as to enable us to inspect and accept them, if delivered absolutely in accordance with our order. As arranged, we will have to reject them if not supplied equal to our sample." On December 27, 1917, defendants wrote that they had received notice that the goods were ready for shipment, and they said: " Please have the goods sent at once to our store rooms at 134 Cedar Street, N. Y. City, where they will be inspected by us according to our arrangements made with your good selves." And on December 29, 1917, defendants wrote: " We received the 90 cases this morning. The contents will be inspected Monday morning." It is conceded that December 29, 1917, fell on Saturday. The defendants offered

evidence that they inspected the goods on December 31, 1917, and that they found imperfections in the manufactured tacks. They testified that they notified plaintiffs the same day by telephone, which notice plaintiffs denied receiving, but on January 7, 1918, defendants formally wrote plaintiffs " to confirm conversation which we had with you over the ' phone," and stating: " Under these circumstances we have to reject the 90 cases and the same are at your disposal." Plaintiffs are notified to call at defendants' storeroom and to take the cases away, otherwise defendants will charge them storage. They do not wish plaintiffs to replace them or substitute.

If the ninety cases of tacks were not in accordance with sample, I think the rejection was within a reasonable time. Plaintiffs refused to take back the cases and they were in defendants' storerooms held for account of plaintiffs at the date of the trial. Plaintiffs claimed that the rejection of the tacks was in bad faith, and that defendants, having received the notice from their correspondents in Brazil to cancel the order, intended to reject them in any event. However that may be, the jury by their verdict found that the tacks manufactured and offered were in accordance with the sample, and as already stated the evidence justified the verdict.

At the end of plaintiffs' case in chief, and again at the close of the evidence, the defendants moved for a dismissal of the complaint upon the ground that title to the merchandise never passed to defendants, that the goods were sent to defendants' warehouse for inspection and rejected as not in accordance with the sample, and that an action for the purchase price could not be maintained under the Personal Property Law (§§ 144, 145, as added by Laws of 1911, chap. 571); that there was no allegation in the complaint, or evidence, that the goods could not be resold for a reasonable price (Pers. Prop. Law, § 144, subd. 3, as added by Laws of 1911, chap. 571), and that where a buyer wrongfully neglects or refuses to accept and pay for goods the seller is limited to an action against him for damages for non-acceptance, the measure of damages being the estimated loss directly and naturally resulting in the ordinary course of events, from the buyer's breach of contract. (Id. § 145, subds. 1, 2, as added by Laws of 1911, chap. 571.)

The learned trial justice denied the motion to dismiss the complaint over defendants' exception. He was of opinion that the Personal Property Law (§ 100, rule 3, subd. 1, as added by Laws of 1911, chap. 571) applied to the case. The subdivision of rule 3 referred to is as follows: " When goods are delivered to the buyer ' on sale or return,' or on other terms indicating an intention to

make a present sale, but to give the buyer an option to return the goods instead of paying the price, the property passes to the buyer on delivery, but he may revest the property in the seller by returning or tendering the goods within the time fixed in the contract, or, if no time has been fixed, within a reasonable time." He left it to the jury to say, " Did these goods comply with the sample in bulk? " On their answer to this question depended the verdict. The jury found for the plaintiffs in the full amount claimed, that is, the agreed purchase price.

On the evidence in the case I do not think it can be said that the title to the merchandise passed to defendants. Rule 2 of section 100 of the Personal Property Law reads: " Where there is a contract to sell specific goods and the seller is bound to do something to the goods, for the purpose of putting them into a deliverable state, the property does not pass until such thing be done." The merchandise in the case at bar was delivered to the defendants for inspection as provided in the contract; they had reserved the right to reject the goods, and apparently under the statute when they are thus rejected, rightfully or wrongfully, the form of action is changed from the common-law action for goods sold and delivered to an action for damages for non-acceptance.

The precise question has been before the court in the First Department.

In *Economu* v. *Schwartz* (198 App. Div. 723) Mr. Justice MERRELL, writing for the court, referred to the enactment of the Sales of Goods Act (Pers. Prop. Law, art. 5, §§ 144, 145, as added by Laws of 1911, chap. 571), and said (p. 728): " Prior to the aforesaid enactment, the New York rule, as laid down by a long line of decisions, was that where the seller of personal property makes due tender of performance, but the buyer refuses to take the goods, the seller may retain the goods and treat the same as belonging to the buyer, and recover the contract price from him. This rule prevailed at common law in this State regardless of whether or not the goods were readily resalable. (Bogert ' The Sale of Goods in New York,' 245; *Bement* v. *Smith*, 15 Wend. 493; *Dustan* v. *McAndrew*, 44 N. Y. 72; *Hayden* v. *Demets*, 53 id. 426; *Mason* v. *Decker*, 72 id. 595; *Quick* v. *Wheeler*, 78 id. 300; *Hunter* v. *Wetsell*, 84 id. 549; *Atkinson* v. *Truesdell*, 127 id. 230; *Van Brocklen* v. *Smeallie*, 140 id. 70; *Ackerman* v. *Rubens*, 167 id. 405; *Gross* v. *Ajello*, 132 App. Div. 25.) In his note under section 144 (at p. 246) Bogert says, respecting the rule laid down in the above cases: ' The New York rule upon this subject has been greatly modified by the Sales Act. Now only in cases where the goods ' cannot readily be resold for a reasonable price ' may the seller force the

title on the buyer and recover the price of him. Formerly he could recover the price in all cases after due tender.'" And the court referred to section 100 of the Personal Property Law, where the Legislature prescribed rules for ascertaining the intention of the parties and cited rules 1 and 2 (*supra*), and said that in case of sale by sample when the goods were to be manufactured with right of inspection and to reject if not in accordance with the order: " The mere selection or setting aside of goods so manufactured by the vendor is not sufficient. (*Cooke* v. *Millard*, 65 N. Y. 352; *Boiko & Co., Inc.*, v. *Atlantic Woolen Mills, Inc.*, 195 App. Div. 207; *Funt* v. *Schiffman*, 115 Misc. Rep. 155.) Under no theory of the case can it be said that the settings were appropriated to the contract so as to pass the title to the plaintiff." To the same effect are the decisions in the First Department in *Reichbart* v. *Smith-Eisemann Corporation* (199 App. Div. 571); *Rosenberg Bros. & Co.* v. *Buffum Co., Inc.* (Id. 482); *Bready* v. *Wechsler Co., Inc.* (200 id. 78).

The judgment and order should be reversed on the law, and a new trial granted, with costs to appellants to abide the event.

RICH, JAYCOX, KELBY and YOUNG, JJ., concur.

Judgment and order reversed on the law, and new trial granted, with costs to appellants to abide the event.